

# LS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH A. ANTKOWIAK, on behalf | : | **CIVIL ACTION** 10  3331 |
| of himself and all others similarly situated, | : | |
| **Plaintiffs,** | : | NO. 2010-CV-_____ |
| **vs.** | : | |
| | : | **CLASS ACTION** |
| TAXMASTERS, | : | |
| TAXMASTERS, INC., | : | |
| TMIRS ENTERPRISES, LTD, | : | **JURY TRIAL** |
| TM GP SERVICES, LLC, | : | **DEMANDED** |
| TM GP SERVICES, LLC D/B/A | : | |
| TAXMASTERS, | : | |
| PATRICK R. COX, and | : | **FILED** |
| JEFFREY AARON STEINBERG, | : | |
| **Defendants.** | : | JUL 0 7 2010 |

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

### CLASS ACTION COMPLAINT

Plaintiff, Joseph M. Antkowiak, brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf all others similarly situated, and alleges the following upon information and belief, except as to facts relating to Plaintiff, which are alleged upon personal knowledge:

### INTRODUCTION

1) This class action seeks damages, injunctive and declaratory relief on behalf of a class of all Pennsylvania residents who contracted with Defendant TMIRS Enterprises, LTD ("TMIRS") to work on their behalf with the Internal Revenue Service ("IRS") relative to taxes owed by members of the Class, the preparation and filing of overdue tax returns, handling IRS enforcement actions, performing tax-related services

involving the IRS, and those who received dunning letters from the TaxMasters Collection Attorneys (as defined in Paragraph 12 below).

2)      Plaintiff, Joseph M. Antkowiak, is a resident of the Commonwealth of Pennsylvania, and a citizen of the United States. Mr. Antkowiak contracted with TMIRS to compromise on Plaintiff's behalf and/or otherwise to address overdue tax returns and taxes due for 2004, 2005, 2006, 2007, and 2008.

3)      Defendant TaxMasters, Inc. is a Nevada corporation doing business throughout the United States, including Pennsylvania, with a principal place of business at 900 Town & Country Lane, Suite # 400, Houston, TX 77024.

4)      Defendant TMIRS   is a Texas limited partnership doing business throughout the United States, including Pennsylvania, with a principal place of business at 900 Town & Country Lane, Suite # 400, Houston, TX 77024 and whose affairs are directed and controlled by TM GP Services, LLC, its General Partner.

5)      Defendant TM GP Services, LLC is a Texas limited liability company doing business throughout the United States, including Pennsylvania, with a principal place of business at 900 Town & Country Lane, Suite # 400, Houston, TX 77024 and serves as the General Partner for TMIRS.

6)      None of Defendants, TaxMasters, Inc., TMIRS or TM GP Services, LLC, is registered, licensed or otherwise authorized to conduct business in Pennsylvania. As such, their activities here are *ultra vires*, illegal and void.

7)     Defendant Patrick R. Cox ("Cox") is an adult individual and a resident of Texas, residing at 247 Hedwig Road, Houston, TX 77024. Cox is the sole member of Defendant TM GP Services, LLC, and is also the President, Board Director, and Chief Executive Officer of Defendant TaxMasters, Inc.

8)     Collectively, Defendants Cox, TM GP Services, LLC, TMIRS and TaxMasters, Inc. operate as Defendant "TaxMasters," a fictious Texas entity.

9)     Collectively, Defendants Cox, TM GP Services, LLC, TMIRS, Taxmasters, Inc. and TaxMasters are hereinafter referred to as the "TaxMaster Defendants."

10)    Defendant, Jeffrey Aaron Steinberg, is a licensed Texas attorney (Texas Bar ID No. 24060657) practicing law in Texas and unlawfully and without authorization throughout the United States, including Pennsylvania, with a principal place of business at 900 Town & Country Lane, Suite # 400, Houston, TX 77024.

11)    Defendant Steinberg and other in-house attorneys of TaxMasters not named as Defendants herein are hereinafter collectively referred to as the "TaxMasters Collection Attorneys."

## JURISDICTION AND VENUE

12)    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims arise and are brought under various provisions of federal law.

13)    This Court has supplemental jurisdiction over Plaintiff's state law claims brought herein pursuant to 28 U.S.C. § 1367.

14)     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that many of the acts and practices complained of by Plaintiff occurred within this District.

## FACTUAL BACKGROUND

15)     The TaxMasters Defendants and the TaxMasters Collection Attorneys knowingly and intentionally undertook and directed that their respective businesses and enterprises undertake the illicit practices which are the subject of this suit.

16)     Acting in concert, Defendants have undertaken a common scheme to systematically ensnare and deceive unsuspecting consumers, like Plaintiff Antkowiak, who owe the IRS unfiled tax returns and/or unpaid taxes and who are seeking to address their tax problems by systematically:

- promising to complete and file any and all outstanding tax returns and/or compromise their tax liability to the IRS;
- establishing a "payment plan" for their services;
- obtaining the consumers' credit card information, instantly charging monies against it;
- failing to disclose hidden fees and charges and other information required by statute to be disclosed to consumers under federal and state law;
- failing to engage in any of the services they have promised to perform; and, then,
- exploiting the illegal collection services of the TaxMasters Collection Attorneys to pursue monies the TaxMasters Defendants deem are owed by class members.

4

17) In furtherance of their scheme and common and uniform conduct, Defendants routinely and improperly:

- manipulate, maneuver, and exploit the class members' dire straits with the IRS for financial gain;
- deceive the class into absorbing hidden fees and remitting further payments, while refusing to refund, reimburse, or cancel illegal agreements derived through illegal sales practices committed within the Commonwealth of Pennsylvania and
- knowingly and systematically profit from the moneys wrongfully obtained and unlawfully retained by them.

18) Plaintiff brings this action on behalf of himself and a class of similarly situated persons to seek redress for Defendants' unlawful acts, which have resulted in substantial damages to Plaintiff and the class, and for injunctive relief to prevent those practices from continuing in the future.

19) Whenever in this Complaint it is alleged that Defendants did any act, it is meant that:

a. Defendants performed or participated in the act; or

b. Defendants' officers, agents, or employees performed or participated in the act on behalf of or under the authority of the Defendants; or

c. Defendants ratified and/or are otherwise responsible for the act by virtue of a concerted and corrdinated conduct undertaken and entered into by each of them, in their respective roles.

20) Defendants' illegal actions, as alleged below, are well documented and, are in fact, the subject of a Petition and Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction filed by the Texas Attorney General's Office In the District Court of Travis County, Texas (Exhibit A attached hereto) ("Texas

AG Complaint"). The Texas AG Complaint, together with all attached Exhibits, is incorporated herein fully by reference.

21) The Texas AG Complaint, filed after a lengthy investigation -- an investigation that included taped telephone calls involving the TaxMasters Defendants -- outlines many, but not all, of Defendants' illegal acts alleged in this Complaint. More particularly, the Texas AG Complaint alleges the following in its Paragraph 8:

8.1 [TaxMasters] utilizes advertisements on national television that invite the consumer to " 'solve their tax problems' by calling TaxMasters' toll-free telephone number for a 'free consultation' with a 'tax consultant'. Consumers who accept the invitation and call TaxMasters are connected to a telephone sales representative who proposes a solution to the consumer's tax problems and then closes the deal by obtaining the consumers, and the Plaintiff Class', credit card or bank account information without providing several material disclosures, including that the fees paid by the consumer will be 'non-refundable'

8.2 In the initial sales call, TaxMasters' representatives frequently misrepresent and fail to disclose important aspects of TaxMasters' service and the terms on which they are offered, including, as indicated above, the fact that TaxMasters treats all fees paid as non-refundable, and the fact that TaxMasters will not begin working on a client's case until she has paid all of the installment payments agreed to. The latter misrepresentation can result in TaxMasters' clients who have been told that retaining TaxMasters will 'solve their tax problems,' missing IRS deadlines and otherwise prejudicing their tax cases.

8.3 Defendants operate what they describe as a 'tax resolution' firm, aimed at the market of taxpayers who have received an audit notice, a notice of tax deficiency, or are otherwise in some difficulty with the IRS. Essentially TaxMasters offers to act as the taxpayers' agent in his dealings with the IRS. Although TaxMasters claims that it 'employ[s] and use[s] the expertise of ... tax attorneys [and] tax CPA's,' it says that it 'is not a law firm or a CPA firm.' According to TaxMasters, it provides the following tax-related services, among others (a) stopping IRS wage garnishments, (b) stopping IRS property seizures, (c) assistance with paying back taxes, and (d) settlement of consumers' tax debts by reducing the amount of interest and penalties.

8.4 The image and words of Patrick R. Cox, the President and Chief Executive Officer of TaxMasters, Inc., appear in the numerous TaxMasters

television commercials and on the TaxMasters website, where he introduces himself as the founder of TaxMasters. He represents that TaxMasters will 'get between' the IRS and the consumer, and will solve the consumer's tax problems. He says that former IRS agents and other tax professionals are standing by to assist the consumers with their tax problems.

8.5     TaxMasters runs commercials which air frequently on network and cable television including MSNBC, CNN and Fox News , and on the internet. Customers who call the toll free number featured in TaxMasters' advertisement are connected with an inside salesperson who is not required to have any 'previous tax knowledge,' as a condition of employment, but is encouraged to have a 'firm understanding of the sales process.' During the sales pitch, the salesperson presents the caller with a solution to his tax problem -- one of the services offered by TaxMasters -- and quotes a fee, which can run into thousands of dollars. This fee is generally presented as a flat fee.

8.6     During the 'free consultation' call, which is also the initial call between a consumer and TaxMasters, the 'tax consultants' work to 'close the sale' by obtaining a credit card number or bank account from the consumer so that TaxMasters can collect its fee.    To this end, TaxMasters' sales personnel emphasize the necessity of retaining TaxMasters in order to 'solve' the consumer's tax problem. If the consumer asks to receive a written description of the services prior to agreeing to purchase, the salesperson refuses, telling the consumer that it is not possible to 'generate' the documents without first inputting a payment method into the TaxMasters system.

8.7     The fees that TaxMasters charges for its services are large, typically ranging from $1,500.00 to $9,000.00 or even more. If the consumer cannot afford to pay the fee in whole, or if the consumer balks at agreeing to pay such a large amount without seeing written terms, the 'tax consultant' offers the consumer an installment plan to pay the TaxMasters fee. The consumer is usually required to agree to a down payment of at least $500.00, or 25% of the total fee, whichever is greater.

8.8     The 'tax consultation' reaches its climax when the consumer agrees to retain TaxMasters and to make payment in full or payment via an installment plan. The 'tax consultant' then turns the consumer over to another member of the TaxMasters sales team, the 'verifier' who tells the consumer what a good decision he has made and reviews the payment plan to which the consumer has agreed. Neither the original 'consultant' nor the 'verifier' discloses to the consumer that it is TaxMasters' position that the consumer is now irrevocably bound to pay the initial fee and any future installments before the consumer has signed any written engagement letter or received any services from TaxMasters [attaching a transcription of an actual sales call with TaxMasters as Exhibit E].

8.9     After the call is ended, and in most cases before TaxMasters sends the consumer any written materials, TaxMasters charges the consumer's credit card, or debits the consumer's bank account, for the amount of the whole fee or down payment.   It then sends a letter to the consumer, along with the IRS forms appointing TaxMasters as the consumers' agent, an 'engagement agreement,' and 'engagement guide.' The letter instructs the consumer to sign the engagement agreement and IRS forms and return them to TaxMasters.

8.10     The engagement agreement is a nine page document that contains numerous previously undisclosed terms and conditions printed in small type. These previously undisclosed terms and conditions materially and substantively limit or change services as described by TaxMasters during the sales call with the consumer.

8.11     One of the terms disclosed for the very first time in the engagement agreement involves the cancellation of the agreement by the consumer and the consumer's right to receive a refund.  This disclosure reads as follows:

> **Client's Early Termination Agreement**
> Client may terminate this agreement at Client's discretion by providing Client's notice in writing to Firm. In the event of termination by client, the minimum professional fees due for services rendered or to be rendered will be the higher figure of: (1) the minimum total retainer specified above and the actual fee for any other services performed - or- (2) the actual time expended by Firm at standard billing rates.  If Client has paid more than then minimum fee as determined herein, a refund will be paid. Client agrees to remit any balance in full with its termination notice or to permit any remaining balance to be drafted in full using the payment method established in the installment agreement.

Besides the fact that this paragraph is imbedded in small print in the engagement agreement and is not clearly and conspicuously disclosed, the disclosure is deceptive and confusing, as it appears to say that the consumer may be entitled to a refund.  However, many consumers who have attempted to get a refund from TaxMasters have been denied.  In fact, in correspondence to the consumers after the consumers have requested a refund, TaxMasters has represented to the consumer that it disclosed to the consumer during the 'third-party verification' part of the sales call that 'all fees are non-refundable.'  In truth, TaxMasters does not routinely provide this disclosure to consumers durring the sales calls.  TaxMasters takes the position that its fees are binding and non-refundable whether the consumer has signed the engagement agreement or not.  Consumers who have called TaxMasters to cancel within 24 hours after the initial sales call have been told that TaxMasters will not refund thier money, even though TaxMasters has provided no services at that point, and, indeed, cannot begin working on the

consumer's behalf until the consumer has returned the IRS form appointing TaxMasters as his representative.

8.12    TaxMasters not only refuses to refund the fees already collected by it after the sales call, it also attempts to continue to collect fees from consumers who cancel thier agreements.   In fact, the Defendants have threatened to subject consumers to collection procedures if they refuse to pay fees after the consumer has cancelled the agreement.  In attempting to collect these fees, TaxMasters has threatened to bring suit to collect such fees in Harris County, Texas, even though the consumer is not a resident of Harris County and did not sign the contract on which the alleged debt is based in Harris County.

8.13    In addition to its failure to disclose numerous material terms to the consumer with those terms, TaxMasters makes affirmative representations on its website and during the sales call that contradict some of those undisclosed terms and conditions.  More specificially, as indicated earlier, during the sales call the TaxMasters salesperson presents the consumer with a fee amount for resolving the consumer's tax issue.  The engagement agreement sent later includes terms that state that the fee quoted to the consumer is not in fact the fee required by TaxMasters to resolve the consumer's tax problem, but only the minimum fee. According to the engagement agreement, the TaxMasters fee may be far larger than that quoted on the sales call.

8.14    On its website and during the sales call, TaxMasters represents that it will begin working on the consumer's tax problem as soon as the consumer purchases the services from TaxMasters.   According to the engagement agreement, however, TaxMasters does not have to begin working on the consumer's tax problem until the consumer has paid the TaxMasters fee in full. Therefore, when an installment plan is involved, it may take months before the Defendants begin work on a consumer's file and the only notice that consumers on an installment plan receive about this policy is information that is included in the engagement agreement, as this issue is not disclosed to consumers during the sales call.  The provision is located under the section:

"**Acknowledgements of Client and Firm**," and it reads as follows:

> Client agrees Firm is not obligated to begin providing services to client until all fees are paid in full. Firm may begin providing services earlier than this date at its sole discretion without waiver of this provision or future right to invoke it.

Numerous consumers have complained that they have retained TaxMasters pursuant to an installment plan with the understanding that it would begin work immediately, only to find out later that TaxMasters has done nothing.  Consumers usually learn there is a problem when they receive a notice from the IRS that an

iii.    Fails to perform promised tax services, including
failing to appear at audits and hearings on the consumer's

important deadline was missed, or that the consumer now owes additional interest and penalties to the IRS. These consumers often find their tax cases irreparably prejudiced because they did not understand that TaxMasters would not start its representation until after the client's last fee installment had cleared... .

8.15 Although there are numerous deceptive acts and practices in the manner in which TaxMasters solicits and sells its tax resolution services, the problems are by no means confined to the sales practices. The Texas Office of the Attorney General has received 292 complaints against TaxMasters in the last two years; 97 of those in the first four and one half months of 2010. The Better Business Bureau of Houston Texas, which is where the Defendants base their business operations, has given TaxMasters an 'F' rating, and has received 679 complaints in the last three years. While consumers complain about the deceptive practices described above during the sales process, many of the consumers also complain of service issues with TaxMasters after the consumer has purchased tax resolution services. These complaints include:

     a.    Poor or nonexistent customer service: Consumers complain that after they have purchased services from TaxMasters, TaxMasters:

          i.    Fails to respond to consumer inquiries;

          ii.    Subjects consumers to long hold times on the telephone;

          iii.    Fails to respond to questions by electronic mail or regular mail; and

          iv.    Fails to acknowledge and process requests to cancel and receive refunds.

     b.    Poor or nonexistent tax resolution service: Consumers complain that TaxMasters:

          i.    Dispenses false or erroneous tax information and advice;

          ii.    Makes false representations regarding work done by TaxMasters on the consumer's tax issue, including representing that TaxMasters has consulted with the IRS on the consumer's behalf when it has not in fact contacted the IRS on the consumer's behalf; and

          iii.    Fails to perform promised tax services, including failing to appear at audits and hearings on the consumer's behalf, and failing to halt or postpone garnishments and liens.

22)    The Texas AG Complaint alleges, identically and specifically, Plaintiff's own interactions with Defendants.

23)    More particularly:

- Plaintiff was lured into Defendants' scheme by Defendants television advertisements and false promises of tax relief with the IRS;

- Plaintiff's engagement with TaxMasters to handle Plaintiff's problems with the IRS was "closed" by TaxMasters during the initial sales call pursuant to the identical illegal practices alleged by the Texas AG;

- Plaintiff was put on an illegal "installment" plan and was charged an initial payment of $500 by TaxMasters on his credit card before Plaintiff received any disclosures of any kind from TaxMasters (See Exhibit B, attached hereto and incorporated herein);

- Contrary to representations made to Plaintiff pursuant to their common and uniform script, Defendants refused to begin work on Plaintiff's IRS matter unless and until full payment was received in advance by TaxMasters (See Exhibit C, attached hereto and incorporated herein);

- The contract belatedly sent to Plaintiff by TaxMasters expressly denies and disavows that any fee is a non-refundable "flat-fee" and purportedly authorizes TaxMasters to charge up to $850.00 per hour extra for its services.

- Plaintiff's credit card was repeatedly charged for additional installments, yet Defendants refused to begin work on Plaintiff's IRS matter unless and until full payment was made by Plaintiff (See Exhibit D, attached hereto and incorporated herein);

- Plaintiff attempted to cancel his "contract" with Defendants but Defendants refused, stating that all monies remaining towards the "flat fee" remained due and owing notwithstanding the fact that TaxMasters had not provided any services to Plaintiff (See Exhibit H, attached hereto and incorporated herein);

- Plaintiff filed a complaint with the Better Business Bureau seeking a refund, but Defendants steadfast maintained they were not required to perform any services unless and until full payment was made and that the so-called "flat fee" (a "flat fee" explicitly disavowed by TaxMasters in its

own purported "contract") was "non-refundable" (See Exhibit F, attached hereto and incorporated herein); and,

- On March 8, 2010, the Taxmaster Collection Attorneys contacted Plaintiff at Plaintiff's home in Pennsylvania by U.S. Mail demanding full payment and collection of an alleged consumer debt -- the outstanding balance under the installment plan -- without having performed any work. (See Exhibit G, attached hereto and incorporated herein)

All of the foregoing actions by Defendants are illegal under federal and state statutory and common law, as detailed below.

24)     Plaintiff and the class seek the full remedies available at law and in equity, including a declaration regarding Defendants' illegal practices as set forth herein, injunctive relief, and to recover damages and restitution for the damages they have suffered as a result of Defendants' unlawful activities.

## CLASS ALLEGATIONS

25)     The class consists of all Pennsylvania residents who contracted with Defendant TMIRS to work with the IRS relative to taxes owed by members of the Class, the preparation and filing of outstanding tax returns, handling IRS enforcement actions, performing tax-related services involving the IRS, and those who received dunning letters from the TaxMasters Collection Attorneys from 2006 to the present day (the "Class").

26)     Plaintiff is a member of the Class.

27)     It is estimated that the Class consists of hundreds, if not thousands, of persons throughout the Commonwealth of Pennsylvania and is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable. The exact number

of Class members is presently unknown to Plaintiff but can be readily ascertained through discovery from Defendants' books and records.

28)    There are questions of law or fact common to the members of the Class which predominate over any questions affecting only individual members and which make class certification appropriate in this case. Among the common and predominating questions of law or fact in this case include, but are not limited to, the following:

### Plaintiffs' Claims Under
### The Federal Fair Debt Collection Practices Act ("FDCPA")[1]

a. Do Defendants have legal authority to collect the alleged debts within this Commonwealth?

b.   Do Defendants charge interest, fees and costs in violation of state and federal law?

c. Do Defendants use the TaxMasters Collection Attorneys' professional status to make false, misleading and/or deceptive representations and/or implications that they have authority to take legal action in Pennsylvania?

d. Do Defendants fail to make clear that they have no authority to take legal action in Pennsylvania in their Dunning letters?

### Plaintiffs Claims for
### Violation of 42 Pa.C.S.A. § 2524(a)
### Prohibiting the Unauthorized Practice of Law

Do Defendants engage in the unauthorized practice of law in violation of 42 Pa.C.S.A. § 2524 and 73 Pa.C.S.A. §§ 201-1 *et. seq.* by engaging attorneys who are not licensed to practice law in Pennsylvania who press to collect illegal debts under illegal contracts?

---

[1] The FDCPA explicitly permits a class action and has specific provisions governing such actions, See, e.g. 15 U.S.C. §1692k(a)(2)(B).

### Plaintiffs' Claims For The Violation of Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. §2270.1 et seq. ("FCEU")[2]

Do Defendants, by and through the TaxMasters Collection Attorneys, engage in unfair methods of competition and unfair or deceptive acts or practices, as defined by FCEU and the regulations thereunder, including but not limited to, violations of 37 Pa.Code §§303.3(3), 303.3(14), 303.3(18), 303.6 and 73 P.S. §201-2(4)?

### Plaintiffs Claims Under The Federal Truth In Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") And State Law Claims For Violation of Pennsylvania's Good and Services Act, 69 P.S. § 1101, et seq. ("GSA")

1) Do Defendants' "Agreements:"

a.     comply with all mandated consumer disclosures under TILA and/or the GSA?

b.     contain purported consumer waiver provisions which render them "void" under TILA and/or the GSA? And,

c.     are these "Agreements" "void" in their entirety under TILA and/or the GSA?

2) Do Defendants properly and timely supplement the mandatory consumer disclosures as required by TILA and/or the GSA?

29)     The claims asserted by Plaintiff are typical of the claims of the members of the Class.

30)     This class action satisfies the criteria set forth in Fed.R.Civ.P. 23(a) in that Plaintiff is a member of the Class. Plaintiff will fairly and adequately protect the interests

---

[2] Violating provisions of the Fair Debt Collection Practices Act also constitute *per se* violations of the Pennsylvania FCEU. *See* 73 P.S. §2270.4(a).

of the members of the Class; his interests are coincident with and not antagonistic to those of the Class; he has retained attorneys experienced in class action and complex litigation as his counsel; and he has directly, or through his counsel, access to adequate financial resources to assure that the interests of the Class are adequately protected.

31)     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a)     it is impractical for most members of the Class to prosecute separate, individual actions; and

(b)     after the liability of the defendants have been adjudicated, the individual and aggregate claims of all members of the Class can be determined by the Court.

32)     Litigation of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to the individual Class members, which would substantially impair or impede the ability of other Class members to protect their interests, thereby rendering class treatment of Plaintiff's claims particularly appropriate under Fed. R. Civ.P. 23(b)(1)(A) and (B).

33)     Class certification is also appropriate because the Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate declaratory and/or injunctive relief with respect to the claims of Plaintiffs and the Class members under Fed. R. Civ. P. 23(b)(2).

34)     Defendants have not undertaken the above practices and similar activities in isolation, but instead have done so as part of a common and uniform scheme and plan,

using uniform prepared scripts and standardized form documents applicable to each member of the Class.

35) Numerous common facts and similar activities, which evidence existence of a common and uniform scheme and course of conduct, exist between and among all of the Defendants and others yet to be identified, including:

a. The illegal sales activities undertaken at the direction and control of the TaxMasters Defendants, and

b. The subsequent illegal collection activities undertaken by the TaxMasters Collection Attorneys.

36) The scheme was conducted over many years and was implemented by:

a. the development and adoption of specific guidelines, using a common and uniform prepared script, for setting up and "closing" the sale of TaxMasters' promised services;

b. immediately charging Plaintiff and other members of the Class for tax services which Defendants had no intention of providing; and

c. the development and utilization of integrated collection procedures illegal on their face.

37) As a result of Defendants' deceptive scheme and marketing activities, Plaintiff and Class members have been damaged and continue to be harmed by TaxMasters' ongoing collection efforts and activities.

## COUNT I
### The Federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA")

38) Plaintiff and the Class incorporate and re-allege the preceding paragraphs as if fully set out herein.

39)     Plaintiff and members of the Class, are individuals residing in the Commonwealth of Pennsylvania and are consumers pursuant to 15 U.S.C. §1692 (a)(3).

40)     The TaxMasters Collection Attorneys are a business entity and organization engaged in the business of collecting consumer debts in this Commonwealth.

41)     On or about March 8, 2010, the Taxmaster Collection Attorneys contacted Plaintiff by U.S. Mail at Plaintiff's residence in Pennsylvania in an attempt to collect an alleged consumer debt.

42)     The Taxmasters Collection Attorneys are debt collectors as defined by state law and by the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(a)(6).

43)     At all relevant times hereto, the TaxMasters Collection Attorneys were collecting an alleged debt relating to a consumer transaction pursuant to 15 U.S.C. § 1692(a)(5).

44)     The TaxMasters Collection Attorneys communicated with Plaintiff and the Class on or after one year before the date of this action, in connection with collection efforts, by letters, telephone contact or other documents, with regard to Plaintiff's alleged debt.

45)     The TaxMasters Collection Attorneys' letters contained false, misleading, deceptive and/or confusing statements.

46)     The TaxMasters Collection Attorneys use their position and title as attorneys in order to add heightened urgency and intimidation to their collection practices.

47)     The TaxMasters Collection Attorneys use their attorney status to make false, misleading and/or deceptive representation and/or implications that they have authority to take legal action in Pennsylvania.

48)     The TaxMasters Collection Attorneys failed to make clear to the Plaintiff and the Class that they have no authority to take legal action in Pennsylvania.

49)     Attorneys who conform to the Rules of Professional Conduct, would conduct a reasonable review and would, further, clearly advise an unrepresented consumer that an out of state attorney can take no legal action against Plaintiff or any other member of the Class.

50)     The TaxMasters Defendants conspired with the TaxMasters Collection Attorneys in all of these acts and actively participated in the illegal collection scheme within the Commonwealth and nationally.

51)     Consumers, including Plaintiff and other members of the Class, are damaged and injured in other ways by these tactics.

52)     The TaxMasters Collection Attorneys, in their collection efforts, threatened and charged interest, fees and/or costs in violation of the FDCPA, 15 U.S.C. §§1692f(1) and 1692e(2)(A) and (B).

53)     The FDCPA states that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. Plaintiff and the Class believe, and therefore aver, that TaxMasters Collection Attorneys violated this section of the FDCPA.

54)     The FDCPA states that "a debt collector may not use false, deceptive or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §§1692e(5) and (10), §1692f(8) and §1692j. Plaintiff and the Class believe, and therefore aver, that TaxMasters Collection Attorneys violated these sections of the FDCPA.

55)     The FDCPA states, "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d.

56)     Plaintiff and the Class believe, and therefore aver, that TaxMasters Collection Attorneys violated this section of the FDCPA.

57)     Among other things, the TaxMasters Collection Attorneys falsely represented in their standard form "dunning" letters to Plaintiff and members of the Class that their collection efforts were undertaken on behalf of Defendant "TaxMasters, Inc.," when no Class member had contracted fro tax services with that entity.

58)     For attorneys to avoid liability under Section 1692e(3) of the federal FDCPA, the attorney must apply, "ultimate professional judgment concerning the existence of a valid debt." *Boyd v. Wexler*, 275 F.3d 642, 647 (7th Cir. 2001). *See also Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002), *Alvin v. Rubin*, 84 F.3d 222 (7th Cir. 1996).

59)     Plaintiff and the Class believe, and therefore, aver that TaxMasters Collection Attorneys violated 15 U.S.C. §1692e(3).

60)     Attorneys cannot sell their name, title or status to collect an alleged consumer debt. *Bitah v. Global Collection Services, Inc.*, 968 F. Supp. 618 (D. New Mexico 1997).

61)     It would be deceptive under the FDCPA for a creditor, "to assert that it could take any action that it had no intention of taking and has never or very rarely taken before." *Brown v. Card Service Center*, 464 F.3d 450 (3d Cir. 2006)

62)     The FDCPA prohibits any action that cannot legally be taken or is not intended to be taken. 15 U.S.C. §§1692e (5) and (10).

63)     The TaxMasters Collection Attorneys violated 15 U.S.C. §1692f by threatening to file a suit without any proper legal authority to do so in Pennsylvania.

64)     The FDCPA provides certain rights to the consumer regarding his right to dispute any alleged debt 15 U.S.C. §1692g. Plaintiff believes, and therefore avers, that TaxMasters Collection Attorneys violated this section of the FDCPA.

65)     Any threat of litigation is false, deceptive and a violation of the federal FDCPA if the TaxMasters Collection Attorneys rarely sue consumer debtors or if the TaxMasters Collection Attorneys did not intend to sue the Plaintiff and other members of the Class. *See Bently v. Great Lakes Collection Bureau*, 6 F.3d 62 (2d Cir. 1998);15 U.S.C. §1692e(5), 15 U.S.C. §1692e(10).

66)     A threat of litigation is present simply because the letter comes from an attorney; the letter need not explicitly threaten suit. *Crossley v. Lieberman*, 868 F.2d 566 (3d Cir. 1989). *United States v. Central Adjustment Bureau*, 667 F. Supp. 370, (N.D. Tex. 1986). Here, the standard form letter sent to Plaintiff and other members of the Class was

explicitly captioned "Breach of Contract Claim" and expressly and unambiguously threatened "litigation" (together with costs and "attorneys fees") if the alleged "debt" was not fully paid "within 30 days" – a separate violation of the FDCPA.

67)     An attorney's interstate collection contacts must avoid misrepresenting the attorney's authority to sue where he or she is not admitted to practice. *Crossley v. Lieberman*, 868 F 2d 566 (3d Cir. 1989).

68)     TaxMasters Collection Attorneys' contacts would easily confuse the least sophisticated consumer and cause the consumer to falsely believe that he could be sued in an out-of-state court. It is believed, and therefore averred, that the sole function of the TaxMasters Collection Attorneys was to collect alleged amounts due to TaxMasters by consumers. *Rosa v. Gaynor*, 784 F. Supp. 1 (D. Conn. 1989).

69)     At all times pertinent hereto, the TaxMasters Collection Attorneys were acting by and through their agents, servants and/or employees, who were acting within the scope and course of their employment, and under the direct supervision and control of the TaxMasters Collection Attorneys.

70)     At all times pertinent hereto, the conduct of TaxMasters Collection Attorneys as well as their agents, servants, and/or employees, was malicious, intentional, willful and in wanton disregard for federal and state law and the rights of the Plaintiff and other members of the Class.

71)     The conduct of TaxMasters Collection Attorneys rises to the level which warrants the imposition of punitive damages.

72)   The TaxMasters Collection Attorneys, in their collection efforts, violated the FDCPA, including but not limited to, Sections 1692b, c, d, e, f, g, h and/or n.

73)   The TaxMasters Collection Attorneys, in their collection efforts, used false or deceptive acts and intended to oppress and harass Plaintiff and the Class.

74)   As a result of the wrongful acts and practices of the TaxMasters Collection Attorneys as alleged above, Plaintiff and the Class have been damaged, for which compensation is sought.

WHEREFORE, Plaintiff respectfully requests that his Honorable Court enter judgment for Plaintiff and the Class and against the TaxMasters Collection Attorneys and issue an Order:

(A)   Award Plaintiff and each Class member statutory damages in the amount of One Thousand Dollars ($1,000.00) for each violation of the FDCPA or each separate and discrete incident in which TaxMasters Collection Attorneys have violated the FDCPA;

(B)   Award Plaintiff and each Class member general damages and punitive damages in an amount not less than Ten Thousand Dollars ($10,000.00);

(C)   Award Plaintiff costs of this litigation, including a reasonable attorney's fee at a rate of $500.00 per hour for hours reasonably expended by Plaintiff's attorneys in vindicating his and the Class' rights under the FDCPA, as authorized by 15 U.S.C. §1692k(a)(3); and

(D)   Award declaratory and injunctive relief and such other relief as this Honorable Court deems necessary and proper or as law or equity may allow.

## COUNT II
### Violation of 42 Pa.C.S.A. § 2524(a) Prohibiting the
### Unauthorized Practice of Law

75)    Plaintiff and the Class incorporate and re-allege the preceding paragraphs as if fully set out herein.

76)    Defendants' conduct as alleged above constitutes the unauthorized practice of law in the Commonwealth of Pennsylvania in violation of 42 Pa.C.S.A. § 2524(a).

**WHEREFORE**, Plaintiff and the Class respectfully request that this Court grant the following relief:

(A)    Enter declaratory and injunctive relief against Defendants, declaring their conduct to constitute the unauthorized practice of law and enjoining such conduct in the future; and

(B) Award such further and additional relief as the Court deems just and proper.

## COUNT III
### Violation of Pennsylvania Unfair Trade Practices and
### Consumer Protection Law ("UTPCPL"), 73 P.S.§ 201-1 *et seq.*

77)    Plaintiff and the Class incorporate and re-allege the preceding paragraphs as if fully set out herein.

78)    Under 42 Pa.C.S.A. § 2524(c), a violation of subsection (a) of the UTPCPL, which prohibits the unauthorized practice of law, is a *per se* violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  Similarly, statutory

violations under the FDCPA, the federal Truth in Lending Act, and Pennsylvania's Goods and Services Act (alleged further below) are *per se* violations of the UTPCPL.

79)     The UTPCPL defines "unfair methods of competition and unfair or deceptive acts or practices" and declares them unlawful under the Act in 73 P.S. §§ 201-2(4) and 201-3.   Each and every statutory violation alleged herein (both federal and state) constitutes *per se* violations of those sections, as does TaxMasters tax scheme described above and as further detailed in the Texas AG Complaint.

80)     Defendants violated the UTPCPL by engaging in the unauthorized practice of law in the manner alleged in this Complaint and in violation of 42 Pa.C.S.A. § 2524(a).

81)     Defendants violated 73 Pa.C.S.A. § 201-9.2 in that conduct found to constitute the unauthorized practice of law in Pennsylvania also constitutes under 42 Pa.C.S.A. § 2524(c) a *per se* violation of the Pennsylvania UTPCPL, 73 Pa.C.S.A. § 201-2(4).

82)     In addition to 42 Pa.C.S.A. § 2524(c), the UTPCPL authorizes the Court in 73 Pa.C.S.A. § 201.92, apart from awarding damages and other relief, to "provide such additional relief as it deems necessary or proper."

83)     Through the utilization of the TaxMasters Collection Attorneys, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices, as defined by the UTPCPL.

84)     Through the utilization of the standard, uniform illegal sales tactics, Defendants have engaged in unfair methods of competition and unfair or deceptive acts

or practices, as defined by the UTPCPL and as alleged above and in the Texas AG Complaint.

85)     Defendants have committed numerous statutory violations of the FDCPA which are *per se* violations of the UTPCPL.

86)     As a result of the above violations. Plaintiff and the Class are entitled to statutory, actual, treble and punitive damages as well as attorney's fees and costs and injunctive relief.

WHEREFORE, Plaintiff requests that this Honorable Court issue judgment on Plaintiff and the Class' behalf and against all Defendants for statutory penalty, treble damages, punitive damages, attorney fees, and costs pursuant to 73 P.S. §201-902 as well as injunctive relief.

## COUNT IV
### Violation of Pennsylvania Fair Credit Extension Uniformity Act,
### 73 P.S. §2270 et seq. ("FCEU")

87)     Plaintiff and the Class incorporate and re-allege the preceding paragraphs as if fully set out herein.

88)     Violating provisions of the federal FDCPA constitutes a *per se* violation of the Pennsylvania FCEU, 73 P.S. §2270.4(a).

89)     Plaintiff believes, and therefore avers, that TaxMasters Collection Attorneys engaged in unfair methods of competition and unfair or deceptive acts or practices, as defined by the Pennsylvania FCEU and its corresponding regulations, including but not

limited to, violations of 37 Pa.Code §§303.3(3), 303.3(14), 303.3(18), 303.6 and 73 P.S. §201-2(4).

90)     The TaxMasters Collection Attorneys' acts, as described herein, were done with malicious, intentional, willful and wanton disregard for Plaintiff and the Class' rights with the purpose of coercing Plaintiff and the Class to pay the alleged debt.

91)     As a result of the above violations, Plaintiff and the Class are entitled to statutory, actual, treble and punitive damages and attorney's fees and costs together with the injunctive relief.

        WHEREFORE. Plaintiff requests that this Honorable Court issue judgment on behalf of Plaintiff and the Class and against all Defendants for the statutory damages, treble damages, punitive damages, attorneys' fees and costs pursuant to 73 P.S. § 2207.5 and injunctive relief.

## COUNT V
### Federal Truth In Lending Act,
### 15 U.S.C. § 1601 et seq. ("TILA")

92)     Plaintiff and the Class incorporate and re-allege the preceding paragraphs as if fully set out herein.

93)     Congress' objective in passing TILA was to ensure that the true cost of goods and services be fully and completely disclosed to the consumer in writing prior to the consumer's purchase and agreement to those terms.

94)     One of the means of circumventing the Congressional objectives of TILA was to "bury" the cost of credit in the price of goods or services sold.

26

95)    Congress was well aware from various studies and hearings that merchants could used such devices to evade TILA's objectives.

96)    As a direct result of Congress' concerns, the "Four Installment Rule" of Regulation Z was enacted by the Federal Reserve Board under its delegated rulemaking authority.  12 CFR § 226.2(k)(1972 rev).

97)    Section 121 of TILA requires merchants who regularly extend credit, with attendant finance charges, to disclose certain contract information "to each person to whom consumer credit is extended and upon whom a finance charge is or may be imposed..." 15 U.S.C. §§ 1602(f); 1603; 1631.

98)    Among other relevant facts, the merchant must, where applicable, list the cash price of the merchandise or services sold, the amount of finance and other charges, and the rate of the charges.  15 U.S.C. §1638.

99)    Under TILA, merchants must also prominently disclose other terms and conditions in the form and content mandated by TILA and regulations promulgated thereunder.

100)    Failure to disclose the information in the form and content mandated by TILA and its accompanying regulations renders the seller liable to the consumer for a penalty of twice the amount of the finance charge, but in no event less than $100 or more than $1,000.00.  15 U.S.C. §1640.

101)    The creditor may also be assessed for the costs of the litigation, including reasonable attorney's fees.  15 U.S.C. §1640.

102)    Defendants are merchants within the meaning of TILA.

103)    Defendants regularly extend credit to consumers within the meaning of TILA.

104)    As a common and ordinary course of business, Defendants extended their installment payments with the Plaintiff and other members of the Class to more than four payments within the "Four Installment Rule" of Regulations of TILA.

105)    As a common and ordinary course of business, Defendants avoid any disclosures required by TILA at the inception of the "relationship." Without providing any written materials whatsoever and certainly without providing any of the advance written disclosures required by TILA and other laws, Defendants utilize standard sales techniques and practices pursuant to common uniform scripts to "close" the consumer with false promises, half-truths and outright fraud, billing consumers' credit cards before sending any written materials at all.

106)    Defendants' violations of TILA are *per se* in that, as a common, ordinary course, the consumer does not receive any paperwork until and unless he or she has already made the first installment payment and agreed to engage TaxMasters -- agreements deceptively obtained through standard techniques and practices and a common scheme to "close" the transaction with the consumer through false promises, half-truths and outright fraud.

107)    Defendants violations of TILA are *per se* in that as a common, ordinary course the consumer does not receive any disclosure as to what the "cash price" of TaxMasters' services truly is and TILA's "Four Installment Rule" creates an irrebuttable

presumption that when installment terms are extended over four payments, the arrangement includes a hidden finance charge. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356 (1973).

108)   Defendants' obligations under TILA survive the execution of any written agreement and require updated disclosures throughout the course of the "relationship."

109)   Defendants' violation of TILA is *per se* in that, as a common, ordinary course, the consumer does not receive any disclosures of any kind, at any time mandated by TILA.

110)   As a result of Defendants' numerous, pervasive, and overwhelming TILA violations, the "Engagement Agreements" between Defendants and the Class are void, *per se.*

111)   TILA is a strict liability statute.   Therefore, under TILA, statutory damages are awarded in any case where the creditor has violated its provisions, regardless of whether the conduct was intentional.

112)   Defendants' conduct, however, was intentional and so pervasive, as a common and ordinary course, that the maximum sanction allowable under law is warranted.

WHEREFORE, Plaintiff requests that this Honorable Court issue judgment on behalf of Plaintiff and the Class and against all Defendants under TILA for statutory damages, treble damages, punitive damages, and attorneys' fees and costs, together with injunctive relief.

## COUNT VI
### Violation of Pennsylvania's Goods
### and Services Act, 69 P.S. § 1101, et seq. ("GSA")

113)   Plaintiff and the Class incorporate and re-allege the preceding paragraphs as if fully set out herein.

114)   The purported "Engagement Agreements" between TaxMasters and the Class are contracts within the scope and coverage of the GSA.  69 P.S. § 1103.

115)   Pursuant to the GSA, any purported waiver of rights by the buyer of goods or services is contrary to public policy and is unenforceable and void.  69 P.S. §1102.

116)   The GSA is to be viewed and applied consistent with TILA and all of the regulations and rulings surrounding that federal statute.

117)   The TaxMasters' purported "Engagement Agreements" are void under the GSA because Defendants' scheme purposefully evades any of the mandatory disclosures required by TILA and the GSA.

118)   The TaxMasters' "Engagement Agreements" purport to contain numerous consumer waivers that are unlawful under the GSA.

119)   Buried in small type and, in most of the cases, not furnished to the consumer until after full or partial payment has already been made, TaxMasters' unlawful consumer waivers inserted into the "Engagement Agreements" by Defendants are void *per se* and on their face.

120)   The GSA provides for reasonable attorney's fees and costs, treble recovery, and venue exclusively with this Court. 69 P.S. § 2001, 2004, 2005

WHEREFORE, Plaintiff requests that this Honorable Court issue judgment on behalf of Plaintiff and the Class and against all Defendants for the statutory damages, treble damages, punitive damages, and attorneys' fees and costs, together with injunctive relief.

## JURY DEMAND

Plaintiff and the Class hereby demand trial by jury of all issues properly triable thereby.

**Dated:** _7|1|2010_

LAW OFFICES OF KENNETH A. JACOBSEN

By: _____
Kenneth A. Jacobsen
Attorney I.D. # 31208
12 Orchard Lane
Wallingford, PA  19086
(610) 566-7930

**O'KEEFE & SHER, P.C.**
Joseph A. O'Keefe
Attorney I.D. # 77068
Konrad B. Jarzyna
Attorney I.D. # 92400
15019 Kutztown Road
Kutztown, PA 19530
(610) 683-0771

## VERIFICATION

I, Joseph M. Antkowiak, state and aver that the facts set forth in the foregoing Complaint are based on information furnished to counsel, which information has been obtained by counsel in the course of this lawsuit.

The language of the Complaint is that of counsel and not of the undersigned. The undersigned verifies that he has read the attached Complaint and that the facts set forth therein are true and correct to the best of his information and belief.

To the extent that the language of the Complaint is that of counsel, the undersigned has relied upon counsel in making this Verification. This Verification is made subject to the penalties relating to unsworn falsification to authorities.

Dated: 7/1/2010

Joseph M. Antkowiak