IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH A. ANTKOWIAK, on behalf of, | : | |
| himself and all others similarly situated, | : | |
| Plaintiffs | : | Civil Case |
| | : | |
| v. | : | |
| | : | |
| TAXMASTERS, et al. | : | No. 10-3331 |
| Defendants | : | |

MEMORANDUM

**Stengel, J.**                                                          **March 17, 2011**

Mr. Antkowiak filed a complaint against TaxMasters, TaxMasters, Inc., TMIRS

Enterprises Ltd., TM GP Services, LLC, Patrick R. Cox and Jeffrey A. Steinberg alleging

violations of the Truth in Lending Act, the Fair Debt Collection Practices Act, and

various state laws.

Defendants filed a motion to compel arbitration and dismiss, or in the alternative to

dismiss for failure to state a claim. For the reasons set forth below I will deny the motion

to compel arbitration and grant in part and deny in part the motion to dismiss.

I.    Background

The complaint alleges TaxMasters, Inc. is a Nevada Corporation.[1] TMIRS is a

Texas limited partnership, whose affairs are controlled by TM GP Services, LLC, its

general partner. Complaint at ¶ 4. TM GP Services, is a Texas limited liability company,

which serves as the general partner for TMIRS. Id. at ¶ 5. TaxMasters, Inc., TMIRS, and

---

[1] Compliant at ¶ 3, Antkowiak v. TaxMasters, No. 10-3331 (E.D. Pa. filed July 7, 2010).

TM GP Services are not registered, licensed, or otherwise authorized to do business in Pennsylvania.  Id. at ¶ 6.

Patrick R. Cox is the sole member of TM GP Services, and is the president, board director, and chief executive officer of TaxMasters, Inc.  See Complaint at ¶ 7.  Mr. Cox, TM GP Services, TMIRS, and TaxMasters, Inc. operate as "TaxMasters," a fictitious Texas entity.  Id. at ¶ 8.  Jeffrey Aaron Steinberg is a licensed Texas attorney.  Id. at ¶ 10. The complaint refers to Mr. Steinberg and other in-house attorneys of TaxMasters as "TaxMasters Collection Attorneys."[2]  Id. at ¶ 11.

Mr. Antkowiak's complaint relies on a complaint filed in a Texas court by the Texas Attorney General.  See Complaint at ¶ 21.  The Texas AG complaint alleges TaxMasters offers to act as the consumer's agent in his dealings with the IRS. TaxMasters claims it "employ[s] and use[s] the expertise of . . . tax attorneys [and] tax CPAs" but states it "is not a law firm or a CPA firm."

Mr. Cox appears in the TaxMasters television commercials and on the TaxMasters website.  He represents TaxMasters "will get between the IRS and the consumer, and will solve the consumer's tax problems."  He states former IRS agents and other tax professionals are standing by to assist consumers.  See Complaint at ¶ 21.

---

[2] Collectively, I will refer to all defendants as "Defendants."  I will refer to Mr. Cox, TM GP Services, TMIRS, and TaxMasters, Inc. collectively as "TaxMasters."  Mr. Antkowiak refers to Mr. Steinberg and the other TaxMasters collection attorneys collectively as "TaxMasters Collection Attorneys."  No official entity entitled "TaxMasters Collection Attorneys" exists, but I will use the term for purposes of this memorandum opinion.

The Texas AG complaint suggests each inquiry by consumers follows a pattern or scheme.  When consumers call the toll free number, the sales person, who is not required to be a tax professional, presents a solution to the consumer's tax problem, and quotes a fee, which is presented as a flat fee.  Id.  The sales person obtains a credit card number or bank account number from the consumer.  If the consumer requests to receive a written description of the services prior to agreeing to purchase the services, the salesperson refuses, informing the consumer the documents cannot be generated without inputting the payment method into the computer.  Id.  If a consumer cannot afford the quoted fee in full, the sales person offers an installment plan.  See Complaint at ¶ 21.  After the consumer agrees to retain TaxMasters, the consumer is routed to another member of the sales team, the "verifier," who informs the consumer he has made a good decision and reviews the payment plan.  See Complaint at ¶ 21.

After the call has ended, and "in most cases before TaxMasters sends the consumer any written materials," TaxMasters charges the consumer's credit card or debits the consumer's debit card.  Id.  It sends to the consumer a letter, the IRS forms appointing TaxMasters as the consumer's agent, an engagement agreement, and an engagement guide.  The letter instructs the consumer to sign the engagement agreement and IRS forms and return the documents to TaxMasters.

The engagement agreement contains previously undisclosed terms and conditions.  See Complaint at ¶ 21.  Among these terms are the early termination provision, which

suggests the consumer may be entitled to a refund if the agreement is terminated.  If the

consumer attempts to obtain a refund, he is told TaxMasters informed the consumer

during the telephone call that all fees were non-refundable.  Id.  TaxMasters does not

routinely disclose that the fees are non-refundable during the telephone calls.  Id.

Contrary to the engagement agreement, which states the quoted fee is the "minimum fee,"

id.,[3] the sales representative informs consumers the services will be provided for a flat

---

[3]  The engagement agreement clarified that the fee paid was a "minimum fee," stating the fee:

> [S]tated herein for professional services is the minimum fee for the service indicated. It is not a flat fee for the services.  Client and Firm agree that should a stated service later be found not to be needed, Firm may, at its sole discretion, refund the amount of the stated retainer . . . , void the service and not collect the amount if unpaid by client, apply the retainer to additional services needed by Client, or hold the amount of the retainer on the unneeded service as a credit against future services Client may need.

> All retainer amounts assume the Client responds to all requests for documents in a timely manner and that all required tax returns . . . have been filed . . . and that the governmental authorities will not take any adverse or unreasonable positions in pursuit of Client and that the IRS . . . will perform their duties with all due and reasonable professionalism.  Client is solely responsible for any additional fee and costs incurred should the actual time required on Client's behalf exceed the normal budgeted amount for such services due to any of the above or for other reasons beyond Firm's control.

> All fees quoted are a retainer and a minimum fee to complete that service. Additional fees will apply (1) if Client fails to fully disclose all relevant data and information; (2) if Client requests status reports in excess of those anticipated by Firm; (3) if Client request or requires excessive consultations (as defined by Firm at its sole discretion) either by phone or in person; (4) service requirements on Client's case exceed the norm due either to Client needs or to the requirements of the IRS or other governmental entities pursuing Client's case.  The additional professional fees when applicable will be based on the actual time required and the Firm's professional hourly fee rates that range from fifty to eight hundred and fifty dollars per hour . . . . Rates are subject to change without requirement of advance notice, . . . .

fee, <u>see</u> Complaint at ¶ 21.

On its website and during the telephone conversations, TaxMasters informs consumers it will begin working on the consumer's tax problems as soon as the consumer purchases the services.  The engagement agreement, however, states TaxMasters is not required to begin work until the consumer has paid in full.  <u>Id.</u>

The Texas AG complaint also identifies Mr. Antkowiak's interactions with TaxMasters.  <u>See</u> Complaint at ¶ 22.  It states Mr. Antkowiak's engagement with TaxMasters to handle his problems with the IRS was "closed" by TaxMasters during the initial call.  <u>Id.</u>  Mr. Antkowiak was placed on an installment plan and charged an initial $500 payment.  <u>Id.</u>  TaxMasters charged his credit card before Mr. Antkowiak received disclosures from TaxMasters.[4]  <u>Id.</u>

TaxMasters refused to begin work on Mr. Antkowiak's IRS matter until it received full payment.  <u>Id.</u>[5]  The contract "belatedly" sent to Mr. Antkowiak denies the fee paid is

---

Defendants' Memorandum at Exh. A at 7.

[4]  The engagement agreement is dated December 29, 2008.  Mr. Antkowiak faxed the signed pages on January 7, 2009.  The installment agreement, included with the engagement agreement, provided that the "down payment" of $500.00 was paid on January 7, 2009.  The next payment of $500.00 was due on January 15, 2009.

[5]  The engagement agreement also permits TaxMasters to begin work on the consumer's tax issues prior to receipt of a signed engagement agreement, providing:

> Unless otherwise agreed in writing, Firm may begin providing services in advance or receipt of the above fees and this engagement agreement properly executed by Client.  This option shall be exclusively the Firm's option.  Firm is not obligated to provide any services described herein until full payment is received and the executed engagement agreement is returned to the Firm.  The parties agree that the obligation

a non-refundable "flat-fee" and authorizes TaxMasters to charge up to $850.00 per hour
extra for its services.  Id.

Mr. Antkowiak attempted to cancel the contract.  TaxMasters stated Mr.
Antkowiak still owed the "flat fee" even though no services were provided.  See
Complaint at ¶ 22.  Mr. Antkowiak filed a complaint with the Better Business Bureau
seeking a refund.  TaxMasters maintained it was not required to perform any services
until full payment was made and the "flat fee" was non-refundable.  Id.  On March 8,
2010, the TaxMasters Collection Attorneys contacted Mr. Antkowiak by mail demanding
full payment of the outstanding balance under the installment plan.  Id.

The engagement agreement contains an arbitration provision.  Specifically, the
arbitration provision provides:

> [A]ny and all claims, demands, disputes, or controversies of any kind or nature
> that Client has concerning any of the negotiations leading to the purchase of
> services, terms, and provisions of the sale, engagement agreement,
> arrangements of payments, purchase of service contracts, performance of the
> engagement agreement or services, or any other aspect of the services from
> Firm shall be settled by binding arbitration conducted pursuant to the
> provisions of Title 9 of the United States Code Chapter 1 et seq. and according
> to the Rules of the American Arbitration Association.
>
> Client agrees, covenants , and contracts that there shall be no class arbitration
> between the parties and the only parties to any disputes or controversies to be

---

of Firm to render professional services to Client is expressly contingent upon full
payment of fees under this agreement.  No waiver of Firm's right to suspend or refuse
services may be construed should Firm elect to begin providing services in advance
of receipt of ful payment and the executed engagement agreement.

Defendants' Memorandum at Exh. A at 7-8.

6

arbitrated as more particularly described herein shall be the Client and Firm.

. . . .  The Client agrees that the arbitration proceedings to resolve all such disputes shall be conducted in Houston, Harris County, Texas.  Client agrees to bear all costs of arbitration.  Client agrees to keep confidential the results, decisions, and controversies and all communications in connection with the arbitration proceedings and/or Arbitration Agreement. . . .

Client and Firm agree that all prior contracts and agreements between the parties of any kind and executed at any time prior to the date of this agreement shall, as part of this agreement, be deemed to be modified to include and adopt the arbitration terms of this agreement and to remove the litigation provisions as if all of the prior agreements of contracts originally contained these provisions.

Defendant's Memorandum at Exh. A at 8.

The March 8, 2010 letter Mr. Steinberg sent Mr. Antkowiak states:

. . .  If I do not hear from you, I will assume that you have no intention of voluntarily satisfying your obligation and will make my recommendations regarding further action on your case accordingly.

In addition to the amount of $2,500 due to TaxMasters, if you choose not to voluntarily resolve your account and litigation is filed, TaxMasters would also seek to collect late fees, reasonable attorneys' fees, and costs of court to the full extent provided for in the engagement agreement and/or is otherwise allowed by the law.

I urge you to satisfy your obligation to TaxMasters within 30 days of your receipt of this letter.  Not only is this the right thing to do, but it could also be your last opportunity to settle this matter for only $2,500.00.

Compl. at Exh. G.

II.     Discussion

A.      Arbitration Provision

The Federal Arbitration Act ("FAA") provides that agreements to resolve disputes

by arbitration "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has acknowledged that the arbitrability of a particular dispute is to be determined with a "healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr., 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24-25.

"[A]rbitration is a creature of contract law." E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 195 (3d Cir. 2001). As such, "it is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (quoting Warrior & Gulf 363 U.S. 574, 582 (1960)). Accordingly, whether a party is bound to arbitrate "is a matter to be determined by the [c]ourt on the basis of the contract entered into by the parties." Id. at 649 (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964)). "[G]enerally applicable state-law contract defenses, such as fraud, duress, or unconscionability, . . . may be applied to invalidate arbitration agreements." Salley v. Option One Mort. Corp., 925 A.2d 115, 119 (Pa. 2007).

8

Under the FAA and Pennsylvania law, "a district court must compel arbitration if it finds (1) that a valid arbitration agreement exists between the parties, and (2) that the dispute before it falls within the scope of this agreement." Miron v. BDO Seidman, LLP, 342 F. Supp. 2d 324, 328 (E.D. Pa. 2004) (citing McAlister v. Sentry Ins. Co., 958 F.2d 550, 553 (3rd Cir.1992)). "A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA." Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir.2002).

In Pennsylvania, to be found unconscionable,[6] an arbitration provision must be found both procedurally and substantively unconscionable. "[U]nconscionability 'requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions.'" Gay v. CreditInform, 511 F.3d 369, 392 (3d Cir. 2007) (quoting Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999)). Procedural unconscionability refers to "the process by which an agreement is reached and the form of an agreement." Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 228 (3d Cir. 2008) (quoting Harris, 183 F.3d at 181). Substantive unconscionability considers "whether the arbitration provision 'unreasonably favors the party asserting it.'" Id. (quoting Salley, 925 A.2d at 119). The party challenging the agreement bears the burden

---

[6] "[A]n unconscionability challenge to the provisions of an arbitration agreement is a question of arbitrability that is presumptively for the court, not the arbitrator, to decide." Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 180 (3d Cir. 2010).

of proof.  <u>Salley</u>, 925 A.2d at 120.

      1.    <u>Procedural Unconscionability</u>

"Procedural unconscionability pertains to the process by which an agreement is

reached and the form of an agreement, including the use therein of fine print and

convoluted or unclear language."  <u>Alexander v. Anthony Int'l, L.P.</u>, 341 F.3d 256, 265

(3d Cir. 2003) (quoting <u>Harris</u>, 183 F.3d at 181).  The "element is generally satisfied if

the agreement constitutes a contract of adhesion."  <u>Id.</u>  "A contract of adhesion 'is one

which is prepared by the party with excessive bargaining power who presents it to the

other party for signature on a take-it-or-leave-it basis.'"  <u>Id.</u> (quoting <u>Trailer Marine</u>

<u>Transp. Corp. v. Charley's Trucking, Inc.</u>, 20 V.I. 282, 284 (1984)).  "A contract,

however, is 'not unconscionable merely because the parties to it are unequal in bargaining

position.'"  <u>Id.</u> (quoting Restatement (Second) of Contracts, § 208 cmt. d).

In <u>McNulty v. H & R Block, Inc.</u>, 843 A.2d 1267 (Pa. Super. Ct. 2004), a client of

H & R Block signed two contracts.  The first was a contract for H & R Block to prepare

and file the client's tax return.  The second was an agreement for the client to receive a

refund anticipation loan, using the promise of a tax refund as security for the loan.  H & R

Block was not a party to the loan agreement, but was a beneficiary of an arbitration

provision in the loan agreement.  In <u>McNulty</u>, the plaintiff brought a challenge to the fee

H & R Block charged to electronically file tax returns.  H & R Block argued, pursuant to

the arbitration provision in the loan agreement, the court should compel arbitration.  The

Court found language of the arbitration provision was broad, but applied only to the loan transaction, not other services provided by H & R Block.  In an alternate ground for refusing to compel arbitration, the <u>McNulty</u> Court found the contract was a "classic example of an adhesion contract, which is a 'form contract prepared by one party, to be signed by the other party in a weaker position, [usually] a consumer, who has little choice about the terms.'"  <u>McNulty</u>, 843 A.2d at 1273.

The contract in this case is a contract of adhesion and is procedurally unconscionable.  Mr. Antkowiak is a consumer who was presented with a contract by a company after a telephone discussion with the company's sales person.  In practical terms he entered into an agreement with TaxMasters during the telephone conversation and paid for services before he received a written contract.  The telephone conversation contained no mention of the arbitration provision.  The complaint alleges TaxMasters sent the contract only after Mr. Antkowiak's credit card was charged the initial fee.  Mr. Antkowiak was required to return only the signed pages of the contract.  In addition, the complaint alleges TaxMasters believed it was owed the full amount of the fee after the telephone conversation, before Mr. Antkowiak signed the contract.

2.    <u>Substantive Unconscionability</u>

Substantive unconscionability exists where terms unreasonably favor one party and "the disfavored party does not truly assent."  <u>Alexander</u>, 341 F.3d at 265 (citing <u>Harris</u>, 183 F.3d at 181).

11

Mr. Antkowiak maintains the arbitration provision is unconscionable because it requires Mr. Antkowiak to pay all costs associated with the arbitration, allows TaxMasters access to the courts, but requires Mr. Antkowiak to arbitrate all claims, does not permit class action lawsuits or class arbitration, and requires the arbitration occur in Texas.

a.    <u>Arbitration Expenses</u>

The engagement agreement provides: "Client agrees to bear all costs of arbitration."

Where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.." <u>Green Tree Fin. Corp. v. Randolph</u>, 531 U.S. 79, 90 (2000).  In <u>Green Tree Fin. Corp.</u>, 531 U.S. at 89, the question presented was whether the arbitration agreement was "unenforceable because it says nothing about the costs of arbitration, and thus fails to provide [the plaintiff] protection from potentially substantial costs of pursuing her federal statutory claims in the arbitral forum."  The court noted "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." <u>Id.</u> at 90. However, because the record was silent as to the costs, whether the costs would be prohibitive was "too speculative to justify the invalidation of an arbitration agreement."

In <u>Tomcykoski v. Continuing Care RX, Inc.</u>, 2009 WL 1816953, at *5 (M.D. Pa.

12

June 24, 2009), the United States District Court for the Middle District of Pennsylvania relied on Green Tree and found the plaintiff did not establish substantive unconscionability. The court noted the plaintiff did "not provide the court with information on the actual costs of arbitration, nor does she demonstrate that she could not pay them." Id. In Tomcykoski, the arbitration provision required the plaintiff to bear one-half of the arbitration costs. The court noted that litigation costs also can be substantial costs, and the "'the mere existence of a fee-splitting agreement' does not meet the plaintiff's burden of 'prov[ing] the likelihood of incurring prohibitive costs'" if arbitration is mandated. Tomcykoski, 2009 WL 1816953, at *5 (quoting Blair, 283 F.3d at 610).

Unlike the arbitration provision in Tomcykoski, the provision here requires Mr. Antkowiak to "bear all costs of arbitration," whether he loses at arbitration or prevails.[7] In litigation, the costs would be divided among the parties.

_____

[7] In its reply, TaxMasters states to the extent the court is concerned about the fee provision, TaxMasters agrees to pay the arbitration fee associated with Mr. Antkowiak's claims. It relies on Kaneff v. Delaware Title Loans, Inc., 2007 U.S. Dist. LEXIS 99172, at *2 n.1 (E.D. Pa. Mar. 6, 2007), which noted in a footnote the plaintiff's argument that the arbitration provision was unconscionable because it required her to pay a $125 mandatory filing fee was moot because the defendant agreed to pay the fee if the motion to compel arbitration was granted.

Defendants agreement to pay the costs does not make the issue moot. The contract was drafted by TaxMasters, and in considering whether it unfairly favors TaxMasters, the requirement in the arbitration provision requiring Mr. Antkowiak to pay all costs should be considered. See Salley v. Option One Mortgage Corp., 925 A.2d 115, 129, 130 n.1 (Baldwin, J., dissenting) (stating "[t]he majority notes that defendant agreed to pay [plaintiff's] arbitration fees, but this does not alter the fact that as written, the arbitration provision would require [plaintiff] to pay for arbitration"). In addition, the provision still requires other potential class members to pay all costs associated with arbitration.

b.      <u>Unilateral Arbitration Provision</u>

The arbitration provision requires Mr. Antkowiak to submit all claims to

arbitration, but permits TaxMasters to either submit its claims against Mr. Antkowiak to

arbitration or pursue its claims in court.  In <u>Salley v. Option One Mortgage Corp.</u>, 925

A.2d 115, 116 (Pa. 2007), the Pennsylvania Supreme Court accepted certification from

the United States Court of Appeals of the Third Circuit to address "whether an arbitration

agreement, consummated in connection with a residential mortgage loan, which reserves

judicial remedies related to foreclosure is presumptively unconscionable."  The court

found there is "no presumption of unconscionability associated with an arbitration

agreement merely on the basis that the agreement reserves judicial remedies associated

with foreclosure."  <u>Id.</u> at 129.  The fact that the arbitration clause had an exception for

foreclosure actions "[did] not, in and of itself, render the arbitration agreement

substantively unconscionable."  <u>Id.</u> at 128.  The court noted "there [was] a facially

apparent business justification for such an exception, as the safeguards thereby preserved

assure regularity and consistency for the benefit of both lender and borrower, and

accordingly, there are sound pragmatic and policy reasons why foreclosure proceedings

should be pursued in a court of law."  <u>Id.</u>  <u>Salley</u> relied on the reasoning in a New Jersey

Supreme Court case, <u>Delta Funding v. Harris</u>, 912 A.2d 104, 115 (N.J. 2006), which

noted the exception for foreclosure actions was "hardly surprising in that the foreclosure

of mortgages is a uniquely judicial process."  <u>Id.</u> at 126.

14

The arbitration provision requires Mr. Antkowiak to submit all claims against TaxMasters to arbitration, but permits TaxMasters to either submit its claims against Mr. Antkowiak to arbitration or raise the claims in litigation.  The litigation exceptions are not for limited types of claims and TaxMasters does not present any business justification for requiring only Mr. Antkowiak, not itself, to arbitrate claims.

c.  <u>Class-Action Waiver</u>

The engagement agreement provides: "Client agrees, covenants, and contracts that there shall be no class arbitration between the parties and the only parties to any disputes or controversies to be arbitrated as more particularly described herein shall be the Client and Firm."

"Pennsylvania cases have held that limiting the use of the class-action vehicle, if it raises costs to the point of effectively preventing individual redress, is substantively unconscionable."  <u>Hopkins v. NewDay Fin., LLC</u>, 2008 WL 2654635, at *3 (E.D. Pa. June 30, 2008); <u>accord</u> <u>Thibodeau v. Comcast Corp.</u>, 912 A.2d 874, 883-34 (Pa. Super. Ct. 2006) (discussing cases); <u>McNulty</u>, 843 A.2d at 1268 (holding it is unconscionable to require individual arbitration, precluding class action litigation, if the costs of arbitration effectively prevent an individual from pursuing the claim); <u>Lytle v. CitiFinancial Services</u>, 810 A.2d 643 (Pa. Super. Ct. 2002) (holding that if the costs of arbitrating a single claim effectively deny consumer redress, prohibiting class action litigation or class action arbitration is unconscionable).  In <u>McNulty</u>, the court noted the client was required

15

to pay an initial arbitration fee of $50.00, but would recover only the $37.00 fee charged

by H & R Block for electronic filing.  Id. at 1274.  The client also would be required to

pay any arbitration costs over $1,550.00.  Id. at 1273-74.  The Court found this was "a

situation where the costs of arbitration, minimal though they may seem, work to preclude

the individual presentation of claims."  Id. at 1274.

Some courts have found arbitration provisions that prohibit class actions valid and

enforceable.  These cases are distinguishable.  In Gilmer v. Interstate/Johnson Lane

Corp., 500 U.S. 20, 32 (1991), the United State Supreme Court found the arbitration

clause could prohibit class actions because the arbitrator could award equitable relief and

the EEOC could bring an action seeking class-wide relief.  In Johnson v. W. Suburban

Bank, 225 F.3d 366, 377-79, which found an arbitration provision could prohibit a class

action under TILA, the plaintiff did not allege the arbitration clause was unconscionable.

Johnson, 225 F.3d at 378 n.5.  The Third Circuit in Gay v. CreditInform, 511 F.3d 369,

395 (3d Cir. 2007), refused to follow Pennsylvania Superior Court cases Lytle and

Thibodeau.  It reasoned the plaintiff did not enter the contract under compulsion or

coercion, she merely contended the provision was unconscionable because it required

arbitration of disputes on an individual basis in place of litigation possibly brought on a

class action basis.[8]  The court in Kahn v. Option One Mortg. Corp., 2006 WL 156942, at

*6 (E.D. Pa. Jan. 18, 2006), did not discuss whether an arbitration provision prohibiting

_____

[8] The court in Gay, found the application of the Pennsylvania Superior Court cases would
violate FAA's interest in the promotion of arbitration agreements.  511 F.3d at 393-94.

16

class action was unconscionable.  It merely stated the Third Circuit has held "arbitration clauses should be enforced even where they may render class relief unavailable."  Id.

### d.   Arbitration Location

The engagement agreement provides: ". . .  The Client agrees that the arbitration proceedings to resolve all such disputes shall be conducted in Houston, Harris County, Texas."

"Where the forum selection clause is valid, which requires that there have been no 'fraud, influence, or overweening bargaining power,' the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." Feldman v. Google, Inc., 513 F. Supp. 2d 229, 246 (E.D. Pa. 2007) (quoting Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 873)).  "The objecting party must show that (1) the forum selection clause is the result of fraud or overreaching, (2) its enforcement would violate a strong public policy of the forum, or (3) its enforcement would result in litigation so seriously inconvenient and unreasonable that it would deprive a litigant of his or her day in court." Id. (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15-17 (1972)).

The arbitration provision requires the arbitration occur in Houston, Texas.  This would require Mr. Antkowiak to travel to Texas, TaxMasters's homestate, to pursue his claim.  This, alone, likely would not rise to the level of unconscionability.  However, it can be considered with the other clauses to determine whether the arbitration provision is

unconscionable.

e.     Conclusion for Substantive Unconscionability

Each argument for substantive unconscionability, in and of itself, may not be sufficient to make the arbitration provision unconscionable.  Considered together, however, the provision is substantively unconscionable.  It requires Mr. Antkowiak to pay all costs associated with arbitration, the requirement to arbitrate claims is unilateral, the arbitration provision contains a waiver of the right to pursue a class action, and Mr. Antkowiak would be required to arbitrate the claims in Houston, Texas.  Each provision favors TaxMasters, the drafter of the arbitration provision.

3.     Conclusion

Because the arbitration provision is both procedurally and substantively unconscionable, the provision is unenforceable.  Defendants' motion to compel arbitration will be denied.

B.     Rule 12(B)(6)

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all

reasonable inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks Cnty.

Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all

of the facts upon which he bases his claim.  Conley, 355 U.S. at 47.  Rather, the Rules

require a "short and plain statement" of the claim that will give the defendant fair notice

of the plaintiff's claim and the grounds upon which it rests.  Id.  The "complaint must

allege facts suggestive of [the proscribed] conduct."  Twombly, 550 U.S. at 564.  Neither

"bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse

v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Se. Pa. Transp.

Auth., 897 F. Supp. 893 (E.D. Pa. 1995).  "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice."  Fowler v. UPMC

Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937,

1949 (2009)).  The claim must contain enough factual matters to suggest the required

elements of the claim or to "raise a reasonable expectation that discovery will reveal

evidence of" those elements.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir.

2008) (quoting Twombly, 550 U.S. at 556).

Fowler, 578 F.3d at 210, provides a two-part test to determine whether a claim

survives a motion to dismiss.  "First, the factual and legal elements of a claim should be

separated. The District Court must accept all of the complaint's well-pleaded facts as true,

but may disregard any legal conclusions."  Id. at 210-11 (quoting Iqbal, 129 S.Ct. at

1949).  "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S.Ct. at 1950).  The plaintiff must show "the allegations of his or her complaints are plausible."  Fowler, 578 F.3d at 211 (quoting Phillips, 515 F.3d at 234-35).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Id. (quoting Iqbal, 129 S.Ct. at 1949).  This "'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Fowler, 578 F.3d at 211 (quoting Iqbal, 129 S.Ct. at 1949).

       1.     Truth-in-Lending Act Claim

Count V of Mr. Antkowiak's complaint raises a Federal Truth-in-Lending Act claim.  TILA provides: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. . . ."  15 U.S.C. § 1640(e).  The one-year statute of limitations begins when the loan is executed.  Roche v. Sparkle City Realty, 2009 WL 1674417, at *2 (E.D. Pa. June 12, 2009); accord Bartholomew v. Northampton Nat'l Bank of Easton, 584 F.2d 1288, 1296 (3d Cir. 1982) (TILA statute of limitations begins to run on the date the contract is executed).

In Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 502 (3d Cir. 1998), the

United States Court of Appeals for the Third Circuit approved the application of equitable

tolling to TILA causes of action.  "[T]here are three principal, though not exclusive,

situations in which equitable tolling may be appropriate: (1) where the defendant has

actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the

plaintiff in some extraordinary way has been prevented from asserting his or her rights; or

(3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong

forum."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir.

1994) (citing Sch. Dist. of City of Allentown v. Marshall, 657 F.2d 16, 19-20 (3d Cir.

1981)).

　　　　The contract between Mr. Antkowiak and TaxMasters is dated December 29,

2008.  The complaint was filed on July 1, 2010.  The TILA claim is untimely unless

equitably tolled.  Mr. Antkowiak alleges his claim did not accrue until he received a

February 2010 statement assessing a "Chargeback Service Fee" of $100.00, purportedly

retroactive to July 9, 2009.[9]  This charge was not disclosed in the engagement agreement,

installment agreement, or any other document.

　　　　Mr. Antkowiak did not mention the "Chargeback Service Fee" in his complaint

and referenced the February 2010 statement only in reference to the FDCPA claim.  In

addition, Mr. Antkowiak failed to allege equitable tolling in his complaint.  The

"chargeback service fee," does not toll the statute of limitations for Mr. Antkowiak's

---

[9]  It appears this was a $100 charge for 6 months.  Therefore, it was a $600 charge.

claims.  The fee does not establish TaxMasters actively misled Mr. Antkowiak

concerning the timeliness of his complaint, and does not establish Mr. Antkowiak was

prevented from asserting his rights or asserted his rights in the wrong forum.[10]

> 2.    Fair Debt Collection Practices Act

Count I alleges a violation of the Fair Debt Collection Practices Act, 15 U.S.C.

§1692, et seq.

> a.    Debt Collectors

A "debt collector" is

> [A]ny person who uses any instrumentality of interstate commerce or the mails
> in any business the principal purpose of which is the collection of any debts,
> or who regularly collects or attempts to collect, directly or indirectly, debts
> owed or due or asserted to be owed or due another. . . .

> 15 U.S.C. § 1692a(6).

A creditor is "any person who offers or extends credit creating a debt or to whom a

debt is owed, but such term does not include any person to the extent that he receives an

assignment or transfer of a debt in default solely for the purpose of facilitating collection

of such debt for another."  15 U.S.C. § 1692a(4).  "Creditors–as opposed to debt

collectors–generally are not subject to the FDCPA."  F.T.C. v. Check Investors, Inc., 502

F.3d 159, 171 (3d Cir. 2007) (quoting Pollice v. Nat'l Tax Funding, L.P., 225 F.3d at

---

[10]  To the extent Mr. Antkowiak is arguing the discovery rule prevented the statute of limitations from beginning to run until he received the February 2010 letter stating the "chargeback service fee," he has not establish he could not have been aware of any TILA violations until he received that letter.

403).  "[I]n determining if one is a 'creditor' or a 'debt collector,' courts have focused on the status of the debt at the time it was acquired."  Id. at 173.

TMIRS is the original creditor.  TMIRS did business as "TaxMasters" from January 2004 to April 2009.  On April 6, 2009, TMIRS assigned all of its assets – including its contract with Mr. Antkowiak – to TaxMasters, Inc.  TaxMasters, Inc. was the only remaining corporate entity.  Mr. Steinberg was employed by TaxMasters, Inc., not TMIRS.

The complaint sufficiently alleges Tax Masters, Inc. is a debt collector.  Both parties maintain the engagement agreement was entered into only by TMIRS.[11]  The letter maintains Mr. Steinberg represents TMIRS doing business as TaxMasters and represents TaxMasters, Inc.  The letterhead indicates the letter is from TaxMasters and the letter stated Mr. Steinberg "was asked" to collect the debt.  TaxMasters, Inc., the sole remaining entity, acquired the debt from TMIRS after the debt went into default.  At the time of the letter was sent, TMIRS was no longer an entity.

Because the complaint sufficiently alleges TaxMasters, Inc. is a debt collector, Mr. Steinberg is the employee of a debt collector.[12]

b.    Violation of FDCPA

TaxMasters argues its actions did not violate the FDCPA.

---

[11]  The engagement agreement was executed on behalf of "TMIRS Enterprises, Ltd. dba TaxMasters."

[12]  TMIRS is the original creditor and not a debt collector under the FDCPA.

23

"[A]ny lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor." Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006). "The least sophisticated debtor standard requires more than 'simply examining whether particular language would deceive or mislead a reasonable debtor' because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." Id. (quoting Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000)). Although "the least sophisticated debtor standard protects naive consumers, 'it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" Id. (quoting Quadramed Corp., 225 F.3d at 354-55).

Mr. Antkowiak alleges TaxMasters violated the FDCPA provisions by threatening legal action by attorneys who are not licensed to practice law in Pennsylvania, threatening legal action when TaxMasters rarely, if ever, pursues such action, failing to disclose that any action can be brought only in Pennsylvania, creating a false impression that litigation may be brought against the debtor in Texas, falsely implying TaxMasters can sue Mr. Antkowiak in Pennsylvania when it is prohibited from doing so because it is not registered to do business in Pennsylvania, continuing to demand payment of alleged debt after Mr. Antkowiak disputed the debt, and threatening to assess attorneys' fees, court costs and other expenses in any such "litigation" when such charges are unlawful.

24

Plaintiff's Response at 32-33.

The March 8, 2010 letter Mr. Steinberg sent Mr. Antkowiak states it relates to a

"breach of contract claim" and provides:

> . . . If I do not hear from you, I will assume that you have no intention of
> voluntarily satisfying your obligation and will make my recommendations
> regarding further action on your case accordingly.
>
> In addition to the amount of $2,500 due to TaxMasters, if you choose not to
> voluntarily resolve your account and litigation is filed, TaxMasters would also
> seek to collect late fees, reasonable attorneys' fees, and costs of court to the
> full extent provided for in the engagement agreement and/or is otherwise
> allowed by the law.
>
> I urge you to satisfy your obligation to TaxMasters within 30 days of your
> receipt of this letter. Not only is this the right thing to do, but it could also be
> your last opportunity to settle this matter for only $2,500.00.

Compl. at Exh. G.

### 1)   Abuse or Harass Plaintiff

15 U.S.C. § 1692d provides: "A debt collector may not engage in any conduct the

natural consequence of which is to harass, oppress, or abuse any person in connection

with the collection of a debt."[13]   Section 1692d does not preclude "non-abusive statements

---

[13]   The section provides:

Without limiting the general application of the foregoing, the following conduct is
a violation of this section:  (1) The use or threat of use of violence or other criminal
means to harm the physical person, reputation, or property of any person. (2) The use
of obscene or profane language or language the natural consequence of which is to
abuse the hearer or reader. (3) The publication of a list of consumers who allegedly
refuse to pay debts, except to a consumer reporting agency or to persons meeting the
requirements of section 1681a(f) or 1681b(3) of this title. (4) The advertisement for
sale of any debt to coerce payment of the debt.  (5) Causing a telephone to ring or

designed to encourage voluntary payment" <u>Beattie v. D.M. Collections, Inc.</u>, 754 F.

Supp. 383, 394 (D. Del. 1991).

Mr. Antkowiak sufficiently alleged TaxMasters engaged in conduct in violation of

§ 1692d.  Mr. Antkowiak alleges the letter was sent by an attorney and threatened

litigation, even though Mr. Antkowiak already had informed TaxMasters he would not

pay the debt.  This was "conduct the natural consequence of which is to harass, oppress,

or abuse."

2)    <u>Unfair Practices</u>

"A debt collector may not use unfair or unconscionable means to collect or attempt

to collect any debt."  15 U.S.C. § 1692f.  It is a violation to attempt to collect "any

amount (including any interest, fee, charge, or expense incidental to the principal

obligation) unless such amount is expressly authorized by the agreement creating the debt

or permitted by law."  <u>Id.</u> at §1692f(1).

Mr. Antkowiak sufficiently alleged TaxMasters engaged in conduct in violation of

§ 1692f.  Mr. Antkowiak argues the letter, sent by an attorney, indicated TaxMasters

would bring litigation against him if Mr. Antkowiak did not pay the alleged debt.  The

letter stated it might be his last opportunity to settle the fee for $2,500.00.  Mr. Antkowiak

---

engaging any person in telephone conversation repeatedly or continuously with intent
to annoy, abuse, or harass any person at the called number. (6) Except as provided
in section 1692b of this title, the placement of telephone calls without meaningful
disclosure of the caller's identity.

15 U.S.C. § 1692d.

already had informed TaxMasters he would not pay the debt.

3)    <u>False, Deceptive, or Misleading Practices</u>

FDCPA provides "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  This section includes a non-exhaustive list of prohibited statements, including "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).

a)    <u>Threaten Litigation</u>

In <u>Crossley v. Lieberman</u>, 868 F.2d 566, 570 (3d Cir. 1989), the Third Circuit stated "[a]buses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice.  A debt collection letter on an attorney's letterhead conveys authority and credibility."  In <u>Crossley</u>, the collection letter sent by an attorney referred to the debtor as the "plaintiff" and threatened legal action within one week, even though Pennsylvania law would not permit the creditor to commence the action within the week.  868 F.2d at 571.  The letter did not inform the debtor that a sheriff's sale was not imminent.  In addition, the letter stated "I will be compelled to proceed with suit against you."  <u>Id.</u>  In <u>Lesher v. Law Office of Mitchell N. Kay, P.C.</u>, 724 F. Supp. 2d 503, 508 (M.D. Pa. June 14, 2010), the court stated:

27

Although an attorney may be acting solely in the capacity of a debt collector and may not be communicating any explicit representation of a future course of action, when the attorney acting as a debt collector uses law firm letterhead the attorney acting as a debt collector plainly is communicating to the debtor in his or her capacity as an attorney. Therefore, since it is an attorney's communication, the implication is not avoidable that a threat of litigation is being presented to the debtor.

In Brown v. Card Services Center, 2005 WL 1527707, at *3 (E.D. Pa. June 28, 2005), the court found a letter sent by a collection agency did not threaten litigation, it was a "lawful reminder that litigation is a step available in the debt collection process," Brown, 2005 WL 1527707, at *7 (quoting Jenkins v. Union Corp., 999 F. Supp. 1120 1137-38 (N.D. Ill. 1998)), and the defendant "may indeed choose to take advantage of it," id. (quoting Madonna v. Acad. Collection Serv., Inc., 1997 WL 530101, at *7 (D. Conn. Aug. 12, 1997)).  The court distinguished Crossley, because the letter in Brown was from a collection agency, not an attorney.  In addition, the letter in Brown stated litigation "could" result, whereas the letter in Crossley stated the suit "will" proceed.  The letter in Crossley also mentioned the possible ramifications of litigation, including the forced sale of property.  The letter in Brown did not.[14]

---

[14]  The United States Court of Appeals for the Third Circuit in Brown v. Card Service Center, 464 F.3d 450, 455 (3d Cir. 2006), remanded Brown because "[i]f [the plaintiff] can prove, after discovery that [the defendant] seldom litigated or referred debts such as [the plaintiff's] and those of the putative class members to an attorney, a jury could conclude that the [the defendant] Letter was deceptive or misleading vis-à-vis the least sophisticated debtor."  It "express[ed] no opinion as to whether the language of the [defendant] Letter constitutes a 'threat' under § 1692e(5)," stating it "believe[d] that the facts as alleged in [the plaintiff's] complaint, if proven, could render the [defendant] Letter a 'deceptive' or 'misleading' communication, in violation of § 1692e."  Id.

From the viewpoint of the "least sophisticated debtor," the letter sent by

TaxMasters could be read to threaten legal action.  The letter was from an attorney and

stated it was in reference to a "Breach of Contract Claim."   It stated Mr. Steinberg would

make a recommendation, but in the next sentence it states "if you choose not to

voluntarily resolve your account and litigation is filed, TaxMasters would also seek"

additional costs.  The letter also "urge[d]" Mr. Antkowiak to "satisfy your obligation" and

states "it could be your last opportunity to settle this matter for only $2,500.00."

b)    <u>No Intent to Litigate the Claims</u>

Mr. Antkowiak argues TaxMasters engaged in false, deceptive, or misleading

representations because it rarely, if ever, pursues litigation.  Mentioning litigation as an

option was false and deceptive.

In <u>Brown v. Card Service Center</u>, 464 F.3d 450, 455 (3d Cir. 2006), the United

States Court of Appeals for the Third Circuit found "it would be deceptive under the

FDCPA for [defendant] to assert that it could take an action that it had no intention of

taking and has never or very rarely taken before."  The court reasoned "the least

sophisticated debtor might get the impression that litigation or referral to a . . . lawyer

would be imminent if he or she did not respond within five days." <u>Brown</u>, 464 F.3d at

455.  It found "further proceedings are warranted to determine if such a reading is

'reasonable' in light of the facts of this case." <u>Id.</u>

Mr. Antkowiak sufficiently states a section 1692e claim because it alleged

29

TaxMasters threatened litigation it "had no intention of taking and has never or very rarely taken before."

4)      Unauthorized Practice of Law

Mr. Antkowiak alleges defendants engaged in the unauthorized practice of law in violation of the FDCPA by sending letters threatening litigation to Pennsylvania residents.

The court in <u>Sturdevant v. Thomas E. Jolas, P.C.</u>, 942 F. Supp. 426, 430 (W.D. Wis. 1996) found "[t]he fact that defendant . . . was not a member of the Wisconsin State Bar while attempting to collect a debt in the State of Wisconsin does not constitute a threat of action that cannot legally be taken or an attempt to mislead plaintiff in order to collect the debt."  The United States District Court for the District of New Jersey, in <u>Cohen v. Wolpoff & Abramson, LLP</u>, 2008 WL 4513569, at *7 (D.N.J. Oct. 2, 2008), found the FDCPA does not "require that the attorney conform to a particular state's rules of professional conduct, nor does it limit the definition of 'attorney' based on state of licensure and state of practice."  The court noted the unauthorized practice of law "is a matter of concern to the states which regulate it."  Therefore, the claim that the defendant's unauthorized practice of law constituted the use of unfair and unconscionable means to collect debt failed to state a valid claim.  <u>Id.</u>

Mr. Antkowiak fails to state a claim regarding the unauthorized practice of law

because it is not a valid claim.[15]

### 4) Proper Parties

TaxMasters also alleges Mr. Cox and TM GP Services are not proper parties under the FDCPA.  Mr. Antkowiak alleges Mr. Cox is liable because of direct participation and complicity in the violation.

The Third Circuit in Pollice v. National Tax Funding, 225 F.3d 379, 404 (3d Cir. 2000) found:

> [F]ederal courts that have considered the issue have held that the client of an attorney who is a "debt collector," as defined in § 1692a(6), is vicariously liable for the attorney's misconduct if the client is itself a debt collector as defined in the statute. Thus, vicarious liability under the FDCPA will be imposed for an attorney's violations of the FDCPA if both the attorney and the client are debt collectors as defined in § 1692a(6).

Pollice, 225 F.3d at 404 (quoting First Interstate Bank of Fort Collins v. Soucie, 924 P.2d 1200, 1202 (Colo.Ct.App.1996)).

Both TaxMasters, Inc. and Mr. Steinberg are debt collectors.  Mr. Cox is the president, board director, and chief executive officer of TaxMasters, Inc.  The complaint sufficiently alleges Mr. Cox is a proper party.[16]

---

[15]  To the extent Mr. Antkowiak alleges it was a false and misleading practice for the letter to give the impression he could be sued in a foreign court, i.e., Texas, I find the complaint sufficiently states a claim.

[16]  Mr. Antkowiak also argues the corporate veil should be pierced and Mr. Cox should be held liable.  To disregard the corporate form, Pennsylvania courts consider the following factors: "[U]ndercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." Kaites v. Dep't of Envtl. Res., 529 A.2d 1148, 1151 (Pa. Commw. Ct. 1987); accord

TM GP, however, is not a proper party for the FDCPA claim.  TM GP was the general partner of TMIRS, which was not a debt collector and, therefore, cannot be held liable under the FDCPA.

### 3.    Unauthorized Practice of Law

Count II alleges a violation of 42 Pa.C.S.A. § 2524(a) prohibiting the unauthorized practice of law.  See Complaint at ¶ 75.  It alleges TaxMasters's conduct constitutes the unauthorized practice of law in the Commonwealth of Pennsylvania.  Id. at ¶ 76.

Pursuant to 42 Pa. Cons. Stat. § 2524:

> [A]ny person, including, but not limited to, a paralegal or legal assistant, who within this Commonwealth shall practice law, or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor, or the equivalent in any language, in such a manner as to convey the impression that he is a practitioner of the law of any jurisdiction, without being an attorney at law or a corporation complying with 15 Pa.C.S. Ch. 29 (relating to professional corporations), commits a misdemeanor of the third degree upon

---

Commonwealth of Pa. By Preate v. Events Internat'l, Inc., 585 A.2d 1146, 1150 (Pa. Commw. Ct. 1991).

Mr. Cox was not a mere employee of TaxMasters, Inc.  In 2009, TaxMasters, Inc. reported that Mr. Cox: (1) had the right to elect the majority of the board of directors; (2) can drive down the value of the company's penny stock by exercising options; (3) is the company's largest creditor (receiving up to a million dollars a year in repayments); (4) is earning a minimum of $950,000 a year in salary; (5) enjoys nearly $1,000,000.00 a year in sponsorship fees from the company for his race car; and (6) was entitled to reimbursement for his cellular telephone and healthcare deductible amount.  Plaintiff's Response at 42-43.  In addition, TaxMasters, Inc. has stated the loss of Mr. Cox would be "material" to the health of the company.  Id. at 43.  Mr. Cox's contract states he is responsible for "[m]anaging day to day operations, planning of business direction and other executive decisions as required."  Id.  Mr. Cox certified under federal law that the various TaxMasters entities were 99.01% owned by Mr. Cox, controlled entirely by him, and operating pursuant to his planning and direction.  In addition, he had more than a third of TaxMasters Inc.'s operating expenses "to ensure, among other things, that his race car had a lucrative sponsor and that his advertising company had annual million dollar contracts."

a first violation. . . .

The Pennsylvania Constitution provides: "The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts . . . and for admission to the bar and to practice law. . . ."  Pa. Const. Art. V. § 10(c).

Rule 5.5 of the Rules of Professional Conduct prohibits the practice of law in Pennsylvania by someone "not admitted to practice in this jurisdiction."  The unauthorized practice of law includes a lawyer's "systematic and continuous presence" in Pennsylvania.  Pa. Model Rules of Prof'l Conduct R. 5.5(b)(1).  An unauthorized lawyer also may not "hold out to the public . . . that the lawyer is admitted to practice law in this jurisdiction."  Id. at Rule 5.5(b)(2).   Rule 5.5 allows a lawyer to provide legal services on a temporary basis if the services "are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized."  Pa. Model Rules of Prof'l Conduct R. 5.5(c)(2). In addition the lawyer can provide legal services if the services "are not within paragraphs (c)(2) or (c)(3) and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice."  Id. at 5.5(c)(4).[17]

---

[17]  Comment 6 provides:

There is no single test to determine whether a lawyer's services are provided on a "temporary basis" in this jurisdiction, and may therefore be permissible under paragraph (c).  Services may be "temporary" even though the lawyer provides services in this jurisdiction on a recurring basis, or for an extended period of time,

Mr. Antkowiak fails to state a claim for relief.  There is no indication TaxMasters would not have obtained local counsel had it initiated a lawsuit in Pennsylvania.  Sending a collection letter is not sufficient to establish an unauthorized practice of law claim.

### 4.   Pennsylvania Fair Credit Extension Uniformity Act

Count IV alleges a violation of the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. ¶ 2270, et seq.  It alleges violations of the FDCPA constitute per se violations of the FCEUA.  Complaint at ¶ 88.  Section 2270.4 provides "[i]t shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act."

Because Mr. Antkowiak sufficiently states a FDCPA claim, I will deny

───────────────

as when the lawyer is representing a client in a single lengthy negotiation or litigation.

Comment 15 provides:

Paragraph (d) identifies two circumstances in which a lawyer who is admitted to practice in another jurisdiction . . . may establish an office or other systematic and continuous presence in this jurisdiction for the practice of law as well as provide legal services on a temporary basis.  Except as provided in paragraphs (d)(1) and (d)(2), a lawyer who is admitted to practice law in another jurisdiction and who establishes an office or other systematic or continuous presence in this jurisdiction must become admitted to practice law generally in this jurisdiction.

Comment 17 provides:

If an employed lawyer establishes an office or other systematic presence in this jurisdiction for the purpose of rendering legal services to the employer, the lawyer may be subject to registration or other requirements, including assessments for client protection funds and mandatory continuing legal education.

TaxMasters' motion to dismiss the FCEUA claim.

    5.    Pennsylvania Goods and Services Installment Sales Act

Count VI alleges a violation of Pennsylvania's Goods and Services Installment

Sales Act, 69 P.S. § 1101, et seq.

The GSISA defines "retail installment contract" or "contract" as:

[A]ny contract for a retail installment sale between a buyer and a seller which
provides for repayment in installments, whether or not such contract contains
a title retention provision, and in which a time price differential is computed
upon and added to the unpaid balance at the time of sale or where no time
price differential is added but the goods or services are available at a lesser
price if paid by cash or where the buyer, if he had paid cash, would have
received any additional goods or services or any higher quality goods or
services at no added cost over the total amount he pays in installments.

69 P.S. § 1201(6).

A "'time price differential' or 'service charge'" is defined as:

[T]he amount however denominated or expressed which the retail buyer
contracts to pay or pays for the privilege of purchasing goods or services to be
paid for by the buyer in installments; it does not include the amounts, if any,
charged for insurance premiums, delinquency charge, attorney's fees, court
costs, collection expenses or official fees. Wherever either of such terms is
required to be used under the provisions of this act the other may be used
interchangeably.

69 P.S. § 1201(10).  TaxMasters alleges the contract is not a "retail installment contract"

because it did not call for a "time price differential," the tax services are not available at a

lesser price if paid for in cash, and the tax services would not have been of a higher

quality or greater scope if paid for in cash.  See Defendants' Memorandum at 52.

Mr. Antkowiak alleges the "service charge" "retroactively added by [TaxMasters]"

35

to Mr. Antkowiak's February 24, 2010 statement is a fee assessed for the "privilege of purchasing . . . services to be paid for by the buyer in installments."  This service charge, however, was not paid "for the privilege of purchasing goods or services to be paid for by the buyer in installments."  Time price differentials do not include "delinquency charge[s]" or "collection expenses."

I will grant Taxmasters motion to dismiss the GSISA claim because the complaint fails to allege a contract that is covered by the GSISA.

6.   <u>Pennsylvania Unfair Trade Practices and Consumer Protection Law</u>

Count III alleges a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.  It alleges that under 42 Pa.C.S.A. § 2524(c), a violation of the law prohibiting the unauthorized practice of law is a per se violation of the UTPCPL.  <u>See</u> Complaint at ¶ 78.  It also alleges a violation of the FDCPA, the TILA, and the GSISA are per se violations of the UTPCPL.  <u>Id.</u>  It alleges TaxMasters violated the UTPCPL by engaging in the unauthorized practice of law, engaging in unfair methods of competition and unfair or deceptive acts or practices, and utilizing standard, uniform illegal sales tactics.

A violation of the FCEUA is a per se violation of the UTPCPL.  73 P.S. 2270.5(a) ("If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the act . . . known as the Unfair Trade Practices and Consumer Protection Law).  TaxMasters relies on <u>Wenglicki v.</u>

<u>Tribeca Lending Corp.</u>, 2009 WL 2195221, at *6 (E.D. Pa. July 22, 2009), to support its

contention a FCEUA violation cannot constitute a per se violation of the UTPCPL.  In

<u>Wenglicki</u>, the plaintiff had withdrawn his FCEUA claim, but did not withdraw his

UTPCPL claim, which alleged the violation of FCEUA was a per se violation of the

UTPCPL.  <u>Id.</u>  The plaintiff failed to state a UTPCPL claim because he had "not alleged

'with particularity the elements necessary to support a violation . . . as to a particular

defendant.'"  <u>Id.</u>  Mr. Antkowiak's complaint sufficiently alleges a UTPCPL claim based

on a FCEUA violation.

Similarly, the complaint sufficiently alleges violations of the UTPCPL based on

the FDCPA and unfair methods of competition and unfair or deceptive acts or practices.

Because Mr. Antkowiak fails to state an unauthorized practice of law claim, his

UTPCPL claim also fails.  Similarly, because Mr. Antkowiak's TILA and GSISA claims

fail, his UTPCPL claims based on TILA and GSISA also fail.

III.    <u>Conclusion</u>

Defendants' motion to compel arbitration will be denied.  Defendants' motion to

dismiss the TILA claim for failure to state a claim will be granted.  Defendants' motion to

dismiss the FDCPA claim as for defendants TMIRS and TM GP will be granted.

Defendants' motion to dismiss the FDCPA claim based on the unauthorized practice of

law as to all defendants will be granted.  Defendants' motion to dismiss the remaining

FDCPA claims against TaxMasters, Inc., against Mr. Steinberg and the other TaxMasters

Collection Attorneys, and against Mr. Cox will be denied.  Defendants' motion to dismiss the unauthorized practice of law claim and the GSISA claim will be granted.  Similarly, the motion to dismiss the UTPCPL claims based on TILA, GSISA and the unauthorized practice of law will be granted.  Defendants' motion to dismiss the FCEUA claim and the UTPCPL claims based on the FDCPA, the unfair methods of competition and unfair or deceptive acts, and the FCEUA will be denied.

An appropriate order follows.