IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH A. ANTKOWIAK, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 10-3331 |
| | : | |
| TAXMASTERS, INC., et al., | : | |
| Defendants | : | |

**M E M O R A N D U M**

**Stengel, J.**                                                                              **March 13, 2012**

TaxMasters, a "tax resolution" firm based in Houston, Texas, advertises on national television that it can "solve" delinquent taxpayers' problems with the IRS. On December 29, 2008, Joseph Antkowiak, called to obtain assistance with his tax problems. Antkowiak agreed to the suggested payment plan. TaxMasters has taken the position with other customers that the initial phone call creates a "legal binding agreement" under which the customer is liable for the full contract price. TaxMasters sends an "Engagement Agreement."

The arbitration clause in the agreement contains the following four conditions: (1) a requirement that Antkowiak, but not TaxMasters, use arbitration to resolve all claims; (2) a bar on class action arbitration; (3) a forum-selection clause specifying Harris County, Texas, as the forum for all disputes; and (4) an expense provision requiring Antkowiak to "bear all costs of arbitration." Antkowiak signed and paid two installments, but stopped making payments because TaxMasters was not working on his case. After TaxMasters threatened to take legal action for failure to pay, Antkowiak filed a class action suit alleging various causes of action.

1

On March 17, 2011, this Court denied Defendants' Motion to Compel Arbitration and Dismiss (Doc. #39 and 40). Defendants appealed the denial of the Motion to Compel Arbitration pursuant to the FAA and the case was stayed pending appeal (Doc. #60). The Third Circuit issued and decision vacating and remanding the case for clarification of specific factual and legal findings in response to the intervening Supreme Court Decision in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011).

One of those issues is whether the "bear all costs" provision in the agreement is substantively unconscionable, which would be the case if it prevents Antkowiak from vindicating his rights in the arbitral forum. After submitting supplemental filings, a temporal discovery dispute has arisen as to whether the defendants are entitled to the Plaintiff's current financial information to determine whether he is able to afford arbitration or whether discovery should be narrowed to the timeframe during which the contract was signed and the Plaintiff brought this litigation. For the reasons set forth below, I find that the plaintiff's current financial status is not discoverable. The plaintiff's financial ability should be determined at the time the incident giving rise to the claim occurred or at the time arbitration could have been filed.

The Green Tree Financial Corp. v. Randolph, 531 U.S. 79 (2000) decision suggests that a court adopt a case-by-case approach to assessing the enforceability of arbitration clauses. Green Tree Financial Corp. v. Randolph, 531 U.S. 79 (2000). See also, Bradford v. Rockwell Semiconductor Systems, Inc., 238 F.3d 549, 556 (4th Cir. 2001). In doing so, a court must look to the particular language pertaining to fees and

costs, as well to the actual costs and to the claimant's financial situation.[1]  Spinetti v. Serv. Corp. Int'l, 240 F. Supp. 2d 350, 353-54 (W.D. Pa. 2001).  The Green Tree decision makes clear that the party objecting to the payment of costs as prohibitive bears burden of proof regarding the issue of costs.  Green Tree, 531 U.S. at 92.

In making the determination regarding whether a cost provision renders arbitration prohibitively expensive, the Third Circuit has required a party challenging an expense provision to show (1) the projected costs that would apply and (2) the party's inability to pay those costs.  See Parilla v. IAP Worldwide Servs. VI, Inc., 368 F.3d 269, 283–85 (3d Cir. 2004); Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 268–69 (3d Cir. 2003); see also Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 556 (4th Cir. 2001) (holding that the appropriate inquiry is one that focuses on the claimant's ability to pay the arbitration fees and costs and whether these are substantial enough to deter the bringing of claims).

Plaintiff estimated that he would incur, at minimum, $5,075.58 to arbitrate his claim.[2]  The plaintiff's brief specifically states that on March 8, 2010 when TaxMasters "came after" Plaintiff for his alleged breach of contract through July 10, 2010, when Plaintiff brought this suit, Plaintiff was bankrupt.  Therefore, he was bankrupt at the time he would have taken his dispute to arbitration, and he could not have afforded to defend against a claim of $2,500.00 and/or to assert a claim for $1,500.00 in an arbitral forum.

---

[1] Courts must consider the facts, focusing on "the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims."  Green Tree Financial Corp., 531 U.S. 79 (2000).

[2] The added costs of attorney fees would raise the Plaintiff's minimum expenses to $8,819.58.

3

Plaintiff argues that his current financial status is irrelevant to determining whether the arbitration costs were prohibitively expensive.

Defendants argue Plaintiff has failed to offer any evidence of his financial condition since the termination of the bankruptcy proceeding in October 2010 and that Plaintiff's current financial condition is relevant to the issue of whether the expense clause in the Arbitration Provision is enforceable. They argue that courts routinely consider a party's existing financial condition. For example, in Adamson v. Foulke Mgmt. Corp., 2009 U.S. Dist. LEXIS 118061 (D.N.J. Dec. 18, 2009), the court considered Plaintiff's current financial condition regarding his income and expenses.[3]

However, in Gillespie v. Colonial Life & Accident Ins. Co., 2009 U.S. Dist. LEXIS 55717 (W.D. Pa. June 30, 2009), the court refused to consider the Plaintiff's current financial situation. In Gillespie, the court considered the Plaintiff's financial circumstances in 2006, when the alleged incident and breach of contract occurred as well as two years later, in 2008, when the Plaintiff commenced litigation. The Gillespie court rejected Plaintiff's argument that she currently was unable to afford the costs of arbitration, relying on Zumpano v. Omnipoint Communs., 2001 U.S. Dist. LEXIS 376, *29 (E.D. Pa. Jan. 18, 2001). Gillespie, 2009 U.S. Dist. LEXIS 55717, *14 (citing Zumpano v. Omnipoint Communs., 2001 U.S. Dist. LEXIS 376, *29 (E.D. Pa. Jan. 18, 2001)).

---

[3] However, in Adamson, the Plaintiff failed to provide reliable evidence and failed to make the necessary showing regarding his ability to pay the costs of arbitration, so the court did not reach a decision concerning whether the arbitration agreement was prohibitively expensive. Adamson, 2009 U.S. Dist. LEXIS 118061, 33-34.

In Zumpano, the Plaintiff claimed that his financial circumstances raised a genuine issue of material fact as to whether his potential responsibility for the arbitrator's fees and expenses would substantially deter him from seeking to enforce his statutory rights. However, the court rejected Plaintiff's affidavit as insufficient because it described his current financial condition and not his financial condition at the time the "contract was formed or during the intervening time when he was eligible to file for arbitration." Zumpano, 2001 U.S. Dist. LEXIS 376 at*29.

I agree with the courts' reasoning in Zumpano and Gillespie and, therefore, find that the Plaintiff's financial ability to afford arbitration costs should be determined at the time the incident giving rise to the claim occurred or at the time arbitration could have been filed. Therefore, the temporal scope of discovery should be limited to that specific time-period.

An appropriate Order follows.